942 F.2d 737
 Steven R. HICKS, Plaintiff-Appellee,
v.
CITY OF WATONGA, OKLAHOMA, a Municipal Corporation; R.B.
Bob Chapman, individually and in his official capacity as
Mayor of the City of Watonga, Oklahoma; Pat Despain,
individually and in her official capacity as City Clerk of
the City of Watonga, Oklahoma; Brenda Diffey, individually
and in her official capacity as City Council Member of the
City of Watonga, Oklahoma; Charles Johnson, individually
and in his official capacity as City Council Member of the
City of Watonga, Oklahoma; Herman Brown; Pat Patterson,
individually and in his official capacity as City Council
Member of the City of Watonga, Oklahoma; Duff Norton,
individually and in his official capacity as City Council
Member of the City of Watonga, Oklahoma; Charles Swanegan,
individually and in his official capacity as City Council
Member of the City of Watonga, Oklahoma; Billy Don
Pendergraft, individually and in his official capacity as
City Council Member of the City of Watonga, Oklahoma;
Donald H. Justice, individually and in his official capacity
as City Council member of the City of Watonga, Oklahoma;
Lonnie Rickie, individually and in his official capacity as
Chief of Police of the City of Watonga, Oklahoma, Police
Department; Dale Green, individually and in his official
capacity as a Member of the City Council and in his official
capacity as acting Mayor of the City of Watonga, Oklahoma;
and Daniel Webber, individually and in his official capacity
as City Attorney for the City of Watonga, Oklahoma,
Defendants-Appellants.
 No. 89-6418.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 19, 1991.
 
 Brently C. Olsson (Kent Fleming with him on the brief) of Huckaby, Fleming, Frailey, Chaffin & Darrah, Oklahoma City, Okl., for defendants-appellants.
 Charles E. Wetsel (Robert T. Frantz with him on the brief) of Wetsel & Frantz, Oklahoma City, Okl., for plaintiff-appellee.
 Before McKAY and MOORE, Circuit Judges, and BROWN[1], District Judge.
 McKAY, Circuit Judge.
 
 
 1
 This is an action for damages under 42 U.S.C. § 1983 (1988). The action arose out of the dismissal of Mr. Steven R. Hicks from his job as a police officer for the City of Watonga, Oklahoma. Mr. Hicks brought this action alleging that the appellants violated several of his constitutional rights. Mr. Hicks also brought various pendent state claims. The appellants moved for summary judgment claiming qualified immunity. The trial court found that the appellants are not immune, and denied their motion. This appeal followed.
 
 
 2
 We now hold that summary judgment should have been granted for all appellants on Mr. Hicks' claim that he was deprived of a liberty interest without due process of law. We also hold that appellants Rickey, DeSpain, Baker, Justice, Chapman, Green, Brown, Pendergraft, Norton, Patterson, and Swanegan are immune from damages on Mr. Hicks' claim that he was deprived of a property interest without due process of law, and that they are immune from damages on Mr. Hicks' first amendment retaliatory discharge claims. We affirm, however, the district court's denial of qualified immunity for appellant Diffey on the property interest claim, and hold that Ms. Diffey is not immune on the first amendment claim.
 
 I. FACTS
 
 3
 Mr. Hicks worked in the City of Watonga, Oklahoma, Police Department for ten years, from 1978 to 1988. He rose from the rank of Patrolman to Assistant Chief. Mr. Hicks states that his problems with the City began on October 2, 1987, when he issued citations to a City Councilwoman, Brenda Diffey, and her son. He cited Councilwoman Diffey's son for driving without a license and impounded the Diffeys' car. He then cited Councilwoman Diffey for allowing her son to drive without a license. Mr. Hicks alleges that Councilwoman Diffey made harassing comments to him regarding the citations.
 
 
 4
 Apparently, Mr. Hicks revealed his intention to file a grievance against Councilwoman Diffey for making harassing comments, because on October 5, 1987, the Police Chief, Lonnie Rickey, informed Mr. Hicks that he had met with the Mayor, R.B. Chapman, and the City Clerk, Pat DeSpain. Chief Rickey told Mr. Hicks that if Mr. Hicks proceeded to file his grievance against Councilwoman Diffey, Mr. Hicks' girlfriend would be fired from her job in City Clerk DeSpain's office.
 
 
 5
 The appellants admit that this threat was made. Chief Rickey admitted in his deposition that it was his idea to make the threat, but that Mayor Chapman approved it and City Clerk DeSpain "didn't disapprove it." Deposition of Lonnie Rickey at 36. Mr. Hicks does not allege that any of the other appellants participated in this incident. Despite the threat, Mr. Hicks filed his grievance the next day, October 6, 1987. The threat to fire his girlfriend was never carried out.
 
 
 6
 In the Spring of 1988, several months after he filed his grievance with the Citizens Action Committee, Mr. Hicks again raised the issue of his encounter with Councilwoman Diffey--this time before the City Council. Mr. Hicks attended a City Council meeting where, in addition to relating his grievance about Councilwoman Diffey, Mr. Hicks told the City Council that Chief Rickey had purchased police radars but hid the purchases by representing the transactions as repairs. The City Council issued a letter of reprimand to Chief Rickey because of that revelation. On May 3, Chief Rickey tendered his resignation.
 
 
 7
 Early in 1988, Chief Rickey compiled notes listing infractions which Mr. Hicks had allegedly committed. In the spring of 1988, Councilwoman Diffey asked the Watonga City Attorney, Dan Webber, to investigate the alleged infractions. Mayor Chapman authorized the investigation and City Attorney Webber proceeded, hiring an outside investigator to determine whether there was any substance to the allegations. From the original list of twenty-seven alleged infractions gleaned from Chief Rickey's notes, City Attorney Webber compiled a list of twenty-one alleged infractions which were, in his opinion, substantiated.
 
 
 8
 On May 3, 1988, the Watonga City Council voted unanimously to suspend Mr. Hicks with pay pending a pre-disciplinary hearing. Councilwoman Diffey abstained from voting. The City Council members who voted were Dale Green, Herman Brown, Don Pendergraft, Duff Norton, Pat Patterson, and Charles Swanegan. On May 5, 1988, Mr. Hicks was notified of the suspension and of a pre-disciplinary hearing to be held on May 10.
 
 
 9
 The hearing did not go forward on May 10. Instead, on that date the city provided Mr. Hicks with a list of witnesses who would testify concerning the allegations. Additionally, the City apparently had concerns about compliance with the notice provisions of the Oklahoma Open Meetings Act. The pre-disciplinary hearing was rescheduled for June 2, 1988. Sessions of the hearing were held on June 2, 9, 10, 20 and 27. In all, some twenty-eight hours of testimony were taken. At Mr. Hicks' request, the sessions were opened to the public. Mr. Hicks was represented by counsel. He was allowed to cross-examine witnesses and present witnesses on his own behalf.
 
 
 10
 Chief Rickey took no part in the disciplinary proceedings after May 3. On that date he submitted his resignation, and on May 13 he was relieved of his duties as Police Chief. After he left the City's employ, Chief Rickey stated in his deposition that he would not have recommended disciplinary proceedings, and that he acted at the behest of Mayor Chapman when he turned over his notes containing the allegations against Mr. Hicks. Chief Rickey further stated that he believed the disciplinary proceedings were instigated by Councilwoman Diffey, and that he believed Mayor Chapman and Councilwoman Diffey wanted Mr. Hicks' "head on a platter." Deposition of Lonnie Rickey at 69.
 
 
 11
 It is unclear whether the entire City Council attended the lengthy pre-disciplinary hearing. Mr. Hicks' brief states only that Mayor Chapman "presided as the fact-finder." After the hearing, Mayor Chapman determined that all but seven of the twenty-one allegations were unsubstantiated. He ordered Mr. Hicks' reinstatement but placed a letter of reprimand in Mr. Hicks' file for the seven infractions. Those infractions were: (1) Mr. Hicks released confidential information from the personnel file of another officer without authorization; (2) Mr. Hicks was present at a private residence not on police business while on duty for an unwarranted period of time; (3) Mr. Hicks failed to follow procedure in recording mileage on his police unit; (4) Mr. Hicks failed to respond to a written memo of Chief Rickey as directed; (5) Mr. Hicks failed to properly supervise checkout of walkie-talkie equipment; (6) Mr. Hicks allowed a civilian to be present at the location of live ammunition and firearms training; and (7) Mr. Hicks threatened retaliatory conduct against a dispatcher.
 
 
 12
 In July of 1988, Mr. Hicks gathered signatures on petitions to force a grand jury investigation of city officials' dealings with him. Also, at roughly the same time, Mr. Hicks appealed the letter of reprimand. Although the city charter provided an intermediate appeal to the Police Review Board, with ultimate appeal to the City Council, the appeal went directly to the City Council. The City Council met in special session on August 22, 1988, to hear Mr. Hicks' appeal. At that time, Mr. Hicks and his counsel were again allowed to present arguments. The City Council voted unanimously to uphold the reprimand. Council members Green, Brown, Pendergraft, Diffey, Swanegan, Patterson, and Norton voted.
 
 
 13
 During all of the above proceedings Mr. Hicks was a suspect in an open criminal investigation being conducted by the Blaine County Sheriff. The investigation concerned a missing file containing information about Mr. Hicks' previous criminal convictions and one other charge for child molestation. Because the convictions occurred when Mr. Hicks was a minor, they had been expunged. The other charge occurred when Mr. Hicks was an adult, but it was dismissed for lack of evidence. The file containing this information had been missing for approximately two years. Mr. Hicks alleges that Chief Rickey had full knowledge of this missing file for a long period of time but took no action. He also alleges that "other city officials" had prior knowledge of the missing file, but he does not specifically allege that the new police chief nor any of the other appellants had such knowledge. Brief of Appellee at 8-9.
 
 
 14
 The new Police Chief, D.R. Baker, asked Mr. Hicks on October 3, 1988, to submit to a polygraph examination, with guarantees that the results would not be used against him criminally. At first Mr. Hicks agreed, and Chief Baker scheduled polygraph examinations about the missing file for Mr. Hicks and two other persons. On October 27, Mr. Hicks informed Chief Baker that he would not take the polygraph exam.
 
 
 15
 Also in October, Chief Baker reorganized the department, eliminating the post of Assistant Chief and the rank of Captain. The new system included two Watch Commanders; and Mr. Hicks, now ranked a Sergeant, was given one of those positions. Mr. Hicks was still directly beneath the Chief of Police in the chain of command.
 
 
 16
 On November 22, Chief Baker suspended Mr. Hicks without pay for refusing to take the polygraph and notified him that if he continued to refuse, Chief Baker would move for Mr. Hicks' dismissal. Mr. Hicks continued to refuse and was dismissed on December 26. Mr. Hicks appealed Chief Baker's decision. The Police Review Board heard Mr. Hicks' appeal on January 6, 1989. Mr. Hicks' counsel appeared and argued, and City Attorney Webber appeared for the city. The Police Review Board voted unanimously to uphold the suspension and dismissal, but gave Mr. Hicks the option of becoming a probationary employee for 180 days, thereby waiving his right to due process if he were terminated during the probationary period. The members of the Police Review Board were Councilman Green, Councilman Don Justice, two City of Watonga police officers, and a citizen member who is an attorney. Mr. Hicks appealed the Police Review Board's decision to the City Council. The City Council heard his appeal on January 24, 1989. Again, Mr. Hicks' counsel argued, and City Attorney Webber argued for the City. The City Council voted unanimously to uphold the action of the Police Review Board. Council members Green, Brown, Pendergraft, Diffey, Swanegan, Patterson, and Norton were present and voted. Councilman Justice was not present.
 
 
 17
 Mr. Hicks then filed this action. He named as defendants everyone involved in the threat to fire his girlfriend and everyone involved in all disciplinary proceedings against him, except for the police and civilian members of the Police Review Board. He named another City Councilman, Charles Johnson, who had not been present at any of the meetings in which votes were taken regarding Mr. Hicks. He named each of these people in their individual and official capacities. He also named the City of Watonga.
 
 
 18
 Mr. Hicks sued under 42 U.S.C. § 1983, seeking damages for his termination. He alleged that the appellants conspired to deprive him of liberty and property without due process, that his free speech rights were violated, and that he was fired for exercising his fifth amendment right not to incriminate himself. He also alleged RICO violations. He brought pendent claims for wrongful and retaliatory discharge, defamation, tortious interference with contractual relations, misuse of legal procedure, and interference with prospective advantage. Finally, he alleged that the City Council willfully violated the Oklahoma Open Meetings statute by failing to post proper notices before the Police Review Board meeting and failing to keep minutes of Review Board meetings and executive sessions. He claimed actual and punitive damages.
 
 
 19
 The appellants filed various motions to dismiss, whereupon Mr. Hicks filed an amended complaint in which he dropped the RICO claim and some of the state claims. The remaining state claims are wrongful and retaliatory discharge, tortious interference with contractual relations, and willful violation of the Oklahoma Open Meetings statute.
 
 
 20
 Both sides filed motions for summary judgment, with the appellants claiming qualified immunity. The district court considered the motions to dismiss and the motions for summary judgment together.
 
 
 21
 The district court held that Mr. Hicks had a property interest in his employment and was entitled to due process before deprivation of that interest. The court made no finding about Mr. Hicks' alleged liberty interest in his reputation, because the court had already found that he was entitled to due process. The court held that a genuine question of material fact existed as to whether Mr. Hicks had been subjected to a biased tribunal. The court cited the following circumstantial evidence as sufficient to raise the issue:
 
 
 22
 Plaintiff alleges that because he issued a citation to a council member and later filed a formal grievance against the same council member, he was harassed and driven from his employment. Plaintiff presents both direct and circumstantial evidence regarding personal animosity toward the Plaintiff from said council member. Additionally, in Plaintiff's final appeal to the City Council, two of the five members of the Police Review Board were also the appellate reviewers as members of the City Council on the same issue. The final ruling was based on Plaintiff's failure to take a polygraph as a result of an internal investigation. Plaintiff presents evidence that no internal investigation took place or, at least, the internal investigation was not officially recorded. Plaintiff presents evidence that during intermediate incidents prior to his dismissal, Plaintiff was accused of minor and insubstantial allegations to satisfy a "witch hunt." Plaintiff also offers evidence indicating that the final complaint against the Plaintiff involved an incident which occurred two years earlier. The Court does not pass any judgment regarding the credibility of said evidence, but rather takes said evidence in a light most favorable to the non-movant....
 
 
 23
 Hicks v. City of Watonga, Okla., No. CIV-89-964-W, slip op. at 3-4 (Nov. 22, 1989).
 
 
 24
 The district court found that no fifth amendment violation had occurred, but it made no finding in regard to Mr. Hicks' allegation that his free speech rights were violated. Finally, the court found that a fact question existed as to whether any alleged Open Meeting law violations were "willful," and denied summary judgment on that issue.
 
 
 25
 The court granted summary judgment for City Attorney Webber on grounds of absolute immunity. It granted summary judgment for Councilman Johnson, who was absent from all relevant meetings. It dismissed the claim for punitive damages against the City of Watonga. The court denied the remaining appellants' claims of qualified immunity because Mr. Hicks had a well-established right to an unbiased tribunal, and, in the court's view, the actions of the remaining appellants were not objectively reasonable. The remaining individual appellants filed this interlocutory appeal from the denial of qualified immunity.
 
 
 26
 When reviewing a summary judgment order, we apply the same standard employed by the trial court under Rule 56(c) of the Federal Rules of Civil Procedure. Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). "The moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment, and the court must review the record in the light most favorable to the opposing party." Ewing v. Amoco Oil Co., 823 F.2d 1432, 1437 (10th Cir.1987).
 
 II. JURISDICTION
 
 27
 As an initial matter, Mr. Hicks alleges that this court lacks jurisdiction because the appellants' notice of appeal is captioned "City of Watonga, Oklahoma, et al.," omitting the names of the individual appellants.[2] The docketing statement filed by appellants within the time for filing notice of appeal does, however, properly include the names of the individual appellants.
 
 
 28
 This court recently held that the filing of a docketing statement within the time for filing notice of appeal could cure a notice of appeal which was defective with regard to the identity of the parties. Hubbert v. City of Moore, Okla., 923 F.2d 769, 771-72 (10th Cir.1991). Under this rule, we have jurisdiction over the present appeal.
 
 III. FIRST AMENDMENT CLAIM
 
 29
 The district court did not address Mr. Hicks' first amendment claims. However, because of our disposition of this case, we must reach a conclusion as to the validity of those claims. Mr. Hicks appears to allege that his first amendment rights were violated by (1) the threat to fire his girlfriend if he filed a grievance against Councilwoman Diffey, and (2) by his firing which, he alleges, was in retaliation, either for his "whistle blowing" activities or for the initial filing of a grievance.
 
 
 30
 "It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." Rankin v. McPherson, 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987). Mr. Hicks' rights of free speech include the right to petition for redress of grievances. See Schalk v. Gallemore, 906 F.2d 491, 498 (10th Cir.1990). Mr. Hicks alleges conclusorily that he was fired in retaliation for protected speech, but the facts as alleged either do not state a first amendment claim or are insufficient to withstand a motion for summary judgment on the grounds of qualified immunity.
 
 
 31
 Clearly, the threat to fire Mr. Hicks' girlfriend if he filed a grievance was improper. However, Mr. Hicks experienced no "chilling" of his right to file a grievance. Thus, the threat caused no first amendment injury. He exercised his right to file a grievance and no firing ever took place.[3] In fact, nothing else occurred for several months, until Mr. Hicks went to the City Council to complain again about Councilwoman Diffey and to "blow the whistle" on Chief Rickey. At roughly the same time, the City began investigating charges against Mr. Hicks.
 
 
 32
 In response to the charges against Mr. Hicks, the City conducted a lengthy investigation and hearings. Before the appeal process was completed, Mr. Hicks initiated the grand jury petition which, it appears, complained of the City's treatment of him up to that point, but not about any matter of public interest. In response to Mr. Hicks' charges against Chief Rickey, the City Council issued a letter of reprimand to Chief Rickey. Chief Rickey resigned and participated no further in anything having to do with Mr. Hicks. Thus, Mr. Hicks cannot credibly claim that the City Council was in league with Chief Rickey to retaliate against him for his whistleblowing activities.
 
 
 33
 The new police chief, Baker, became interested in an open criminal case involving Mr. Hicks. Mr. Hicks does not allege that Chief Baker was involved in any way in the previous actions taken against him. Nor does he allege that Chief Baker or the City Council had longstanding knowledge of the criminal investigation, and that they resurrected it only as a pretext to fire him. Rather, Mr. Hicks alleges only that the former Chief Rickey and "other" unnamed city officials had long known about it and had never previously acted upon it. Mr. Hicks' ultimate termination was a direct result of his refusal to take a polygraph examination.
 
 
 34
 However, even if we assume that Mr. Hicks was eventually terminated in part because of his speech, he suffered no constitutional deprivation unless that speech was constitutionally protected. Mr. Hicks argues that his disclosure of Chief Rickey's surreptitious purchase of radar units is a matter of public concern, and therefore is constitutionally protected. To determine whether Mr. Hicks' "whistle blowing" activities are constitutionally protected, the court must first determine whether the speech at issue may be "fairly characterized as constituting speech on a matter of public concern." Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). If the speech does constitute a matter of public concern, the court must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Board of Educ. of Township High School Dist. 205, Will County, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).
 
 
 35
 The Supreme Court has suggested that "bring[ing] to light actual or potential wrongdoing or breach of public trust" is, indeed, a matter of public concern. Connick, 461 U.S. at 148, 103 S.Ct. at 1690. Hicks' revelation to the Council that Chief Rickey misrepresented radar purchases as repairs is a matter of public concern. However, the Pickering balance must still be performed; and Connick indicates that when a matter of public concern arises as part of an ongoing personal dispute, first amendment interests are only slight.
 
 
 36
 Connick involved the firing of an assistant district attorney, Sheila Myers. Myers was an admittedly competent employee, but she became embroiled in a dispute with her supervisors because she was unwilling to accept a proposed transfer. As part of the dispute, she prepared a questionnaire which she distributed to other employees. Myers was terminated for refusing to accept the transfer and was told that the circulation of the questionnaire constituted insubordination. Id. 461 U.S. at 141, 103 S.Ct. at 1687.
 
 
 37
 The questionnaire contained thirteen questions, twelve of which dealt with office policy, morale, and attitudes toward supervisors. One question asked, "Do you ever feel pressured to work in political campaigns on behalf of office supported candidates?" Id. at 155, 103 S.Ct. at 1694. The Court acknowledged that "the issue of whether assistant district attorneys are pressured to work in political campaigns is a matter of interest to the community upon which it is essential that public employees be able to speak out freely without fear of retaliatory dismissal." Id. at 149, 103 S.Ct. at 1691. When applying the Pickering balance, however, the Court stated,
 
 
 38
 [T]he context in which the dispute arose is also significant. This is not a case where an employee, out of purely academic interest, circulated a questionnaire so as to obtain useful research. Myers acknowledges that it is no coincidence that the questionnaire followed upon the heels of the transfer notice....
 
 
 39
 Myers' questionnaire touched upon matters of public concern in only a most limited sense; her survey, in our view, is most accurately characterized as an employee grievance concerning internal office policy. The limited First Amendment interest involved here does not require that [her superior] tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships. Myers' discharge therefore did not offend the First Amendment.
 
 
 40
 Id. at 153-54, 103 S.Ct. at 1693-94. See also McEvoy v. Shoemaker, 882 F.2d 463, 466 (10th Cir.1989) ("in analyzing whether speech constitutes a matter of public concern, the focus is on the motive of the speaker"); Callaway v. Hafeman, 832 F.2d 414, 417 (7th Cir.1987) (was employee's point to bring wrongdoing to light, or was the point to further some purely private interest?). Mr. Hicks' "whistle blowing" took place in the course of an extended personal grievance. Therefore, we hold that his first amendment interests were insufficient to outweigh the City's interest in responding to the charges against Mr. Hicks and that Mr. Hicks' termination did not offend the First Amendment.
 
 
 41
 Mr. Hicks also makes a broader claim that his ultimate termination occurred, not because of the reasons stated by City officials, but because City officials wished to retaliate for Mr. Hicks' filing of a constitutionally protected grievance against Ms. Diffey fourteen months earlier. Realizing that retaliatory motive is easily and frequently alleged, but realizing also that insubstantial claims should be resolved on summary judgment, this court has set forth with some specificity the showing which a plaintiff must make in order to withstand a summary judgment motion on qualified immunity grounds in a retaliatory discharge case. Mr. Hicks has failed to make this showing for all appellants save one. We discuss this issue in more detail in the subsection dealing with qualified immunity.
 
 IV. DUE PROCESS CLAIMS
 A. Deprivation of Liberty Interest
 
 42
 Although the trial court did not reach the issue, the record is clear as a matter of law that Mr. Hicks has failed to state a claim for deprivation of a liberty interest without due process of law. Due process requires that an employee whose liberty interest is threatened be accorded notice and a hearing. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). "The purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons." Id. at n. 12. However, "[o]nly if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is such a hearing required." Codd v. Velger, 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977). No name-clearing hearing is required when the employee does not dispute the substantial truth of the charges against him. Id. at 627-28, 97 S.Ct. at 883-84.
 
 
 43
 The only charge leveled against Mr. Hicks "in connection with his termination" is that he refused to take a polygraph exam and was therefore guilty of insubordination. Mr. Hicks does not dispute that he refused to take the polygraph. Therefore, he was not entitled to a name clearing hearing as to that allegation.
 
 
 44
 Furthermore, even if we assume that the earlier charges which resulted only in a letter of reprimand were somehow connected to his termination, those charges fall into the areas of poor work habits or failure to follow instructions. In order to state a constitutional claim, the charges must implicate "dishonesty or immorality" in order to deprive an employee of a liberty interest in his good name and reputation. See Melton v. City of Oklahoma City, 928 F.2d 920, 927 (10th Cir.1991). This court has held that charges implicating only insubordination or poor work habits are not stigmatizing, and therefore do not violate a liberty interest. See Conaway v. Smith, 853 F.2d 789, 794 (10th Cir.1988) (charges of neglect of duties and insubordination not stigmatizing); Sipes v. United States, 744 F.2d 1418, 1422 (10th Cir.1984) (charge of lack of reliability and engaging in "horseplay" not stigmatizing). Thus, the defendants are entitled to summary judgment on the liberty interest claim.
 
 B. Deprivation of Property Interest
 
 45
 The appellants do not dispute that Mr. Hicks had a constitutionally protected property interest in his employment.[4] The Supreme Court has stated that a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). The extensive hearings provided to Mr. Hicks, in which he was allowed to participate and was represented by counsel, met this constitutional standard. However, "[a] fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases." In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955); Staton v. Mayes, 552 F.2d 908, 913 (10th Cir.), cert. denied, 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977). The question, then, is whether Mr. Hicks was afforded an unbiased tribunal.
 
 
 46
 The Supreme Court has held that a person claiming bias on the part of an administrative tribunal "must overcome a presumption of honesty and integrity in those serving as adjudicators." Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975). In a case applying the Withrow standard, this court stated,
 
 
 47
 Due process is violated only when "the risk of unfairness is intolerably high" under the circumstances of a particular case. Because honesty and integrity are presumed on the part of a tribunal, there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated.
 
 
 48
 Mangels v. Pena, 789 F.2d 836, 838 (10th Cir.1986) (quoting Withrow, 421 U.S. at 58, 95 S.Ct. at 1470) (citations omitted).
 
 
 49
 The most recent Supreme Court decision applying the Withrow standard is Hortonville Joint School Dist. No. 1 v. Hortonville Educ. Ass'n, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). In Hortonville, the school board voted to discharge striking teachers. The teachers alleged that the school board members were biased because they had participated in unsuccessful contract negotiations with the teachers and because the board members had "manifested some personal bitterness toward the teachers, aroused by teachers criticism of the Board during the strike." Id. at 491, 96 S.Ct. at 2313.
 
 
 50
 The Court rejected these arguments, stating that
 
 
 51
 the teachers did not show ... that the Board members had the kind of personal or financial stake in the decision that might create a conflict of interest, and there is nothing in the record to support charges of personal animosity....
 
 
 52
 ... Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not ... disqualify a decisionmaker. Nor is a decisionmaker disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not "capable of judging a particular controversy fairly on the basis of its own circumstances."
 
 
 53
 Id. at 492-93, 96 S.Ct. at 2314-15 (quoting United States v. Morgan, 313 U.S. 409, 421, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941)) (citations omitted). The Court then concluded,
 
 
 54
 A showing that the Board was "involved" in the events preceding this decision, in light of the important interest in leaving with the Board the power given by the state legislature, is not enough to overcome the presumption of honesty and integrity in policymakers with decisionmaking power. Accordingly, we hold that the Due Process Clause of the Fourteenth Amendment did not guarantee respondents that the decision to terminate their employment would be made or reviewed by a body other than the School Board.
 
 
 55
 Id. 426 U.S. at 496-97, 96 S.Ct. at 2315-16 (citation omitted).
 
 
 56
 This court applied Hortonville in Staton v. Mayes, 552 F.2d 908 (10th Cir.), cert. denied, 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977). Staton was brought by a school superintendent who had been dismissed by the school board. In Staton, three of the five school board members had made public statements prior to the termination hearing that they believed the superintendent should be replaced. Those three members then voted, after the hearing, to dismiss the superintendent for incompetence and willful neglect of duty. The other two members voted no. This court held that, in light of the public statements made by the three, they should not have sat on the tribunal which removed him.
 
 
 57
 In this case, Mr. Hicks presents direct or circumstantial evidence of bias only as to tribunal members Diffey and Chapman. Councilwoman Diffey abstained from voting on the suspension that followed the investigation which was initiated at her request, but she did vote to uphold the letter of reprimand and to uphold the termination. Mayor Chapman acted as factfinder at the hearing which resulted in the letter of reprimand, but he has no vote in Council matters unless the Council is equally divided. Okla.Stat.Ann. tit. 11 § 9-104 (West 1978). Therefore, he did not vote on either appeal because the votes against Mr. Hicks were unanimous.
 
 
 58
 As to the other six councilmen who voted on Mr. Hicks' two appeals, he presents no evidence of bias except that they voted unanimously against him. Unlike Staton, this case contains no allegations that the other six councilmen ever made any comment regarding Mr. Hicks. As in Hortonville, Mr. Hicks presents no evidence that the majority of the tribunal members "had the kind of personal or financial stake in the decision that might create a conflict of interest, and there is nothing in the record to support charges of personal animosity." Hortonville, 426 U.S. at 492, 96 S.Ct. at 2314.
 
 
 59
 The circumstantial evidence relied upon by the district court is insufficient. The district court correctly points out that two members of the City Council were also members of the Police Review Board. However, the Supreme Court has held that involvement of tribunal members in earlier proceedings in the same case does not overcome the presumption of honesty and integrity. Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (no unconstitutional risk of bias when members of board of state medical examiners investigate and bring charges, then adjudicate those same charges).
 
 
 60
 The remainder of the circumstantial evidence cited by the district court has to do with other city officials, not the majority of tribunal members. The new Police Chief, Baker, stated in his deposition that he conducted an internal investigation which led him to request that Mr. Hicks take a polygraph examination. The court points out that this internal investigation was not officially recorded. However, this fact has no relevance to the issue of whether the majority of tribunal members were biased. The court also notes that "minor and insubstantial allegations" were brought against Mr. Hicks by City Attorney Webber. However, the insubstantial allegations were dismissed by Mayor Chapman, and the tribunal members never voted on them. Finally, the court points out that the incident over which Mr. Hicks was eventually fired, the missing file, took place two years before Chief Baker decided to conduct an internal investigation. However, Mr. Hicks does not specifically allege that anyone other than former Police Chief Rickey knew about the missing file prior to the time the internal investigation was begun.
 
 
 61
 In order to disqualify the majority of tribunal members in this case, we would have to indulge a presumption against them based purely on their votes. We would have to presume that they were incapable of exercising independent judgment because of their association with Councilwoman Diffey, Mayor Chapman, and the other named City officials, so that they should have been constitutionally disqualified from sitting on Mr. Hicks' disciplinary appeals and should have provided Mr. Hicks with an alternative forum.
 
 
 62
 Such a holding would mean that almost anytime an employee in a small bureaucracy--where everyone knows everyone else--clashes with his superiors, the body elected to make disciplinary decisions will be constitutionally disqualified from doing so. This contravenes the Supreme Court's clear desire to leave such decisions in the hands of the bodies duly elected to make them. See Hortonville, 426 U.S. at 495-96, 96 S.Ct. at 2315-16; Okla.Stat.Ann. tit. 11 § 9-118 (West 1978) (vesting power to fire city employees in mayor, and power to hear appeals from those decisions in city council).
 
 
 63
 Though only one member arguably should have been disqualified from the tribunal which ultimately deprived Mr. Hicks of his job, Mr. Hicks may still have a valid due process claim. " 'Litigants are entitled to an impartial tribunal whether it consists of one man or twenty and there is no way which we know of whereby the influence of one upon the others can be quantitatively measured.' " Cinderella Career and Finishing Schools, Inc. v. F.T.C., 425 F.2d 583, 592 (D.C.Cir.1970) (quoting Berkshire Employees Ass'n of Berkshire Knitting Mills v. NLRB, 121 F.2d 235, 239 (3d Cir.1941)). Thus, if Ms. Diffey is found to have been biased when she cast her vote on Mr. Hicks' dismissal, her presence will have tainted the tribunal and violated Mr. Hicks' due process rights. See, e.g., Antoniu v. SEC, 877 F.2d 721 (8th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1296, 108 L.Ed.2d 473 (1990) (due process violated when commissioner who had made statements indicating prejudgment of case participated in SEC proceedings against securities violator). However, we still must answer the question of whether all the tribunal members in this case, even if it may be said that the presence of one biased member contaminates the tribunal, must stand trial for damages. We hold that they should not, and discuss our reasoning below.
 
 V. QUALIFIED IMMUNITY
 
 64
 We review the denial of a qualified immunity claim de novo. McEvoy, 882 F.2d at 465. "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).
 
 
 65
 As we have already stated, "[i]t is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." Rankin, 483 U.S. at 383, 107 S.Ct. at 2896. Mr. Hicks claimed that he was terminated in violation of his first amendment rights because the termination came in retaliation for the grievance he filed against appellant Diffey. The application of the Harlow "objective reasonableness" standard in a case where a plaintiff alleges impermissible motive or intent was discussed recently in Lewis v. City of Ft. Collins, 903 F.2d 752 (10th Cir.1990). In Lewis, we stated:
 
 
 66
 Harlow crafted this "objective reasonableness" standard for determining the availability of the qualified immunity defense in order to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." However in some cases, the determination of the "objective" reasonableness of an official's conduct rests on establishing whether the defendant acted with an impermissible motive or intent--a highly "subjective" factual element....
 
 
 67
 Where a defendant's subjective intent is an element of plaintiff's claim and the defendant moves for summary judgment based on qualified immunity, the defendant must make a prima facie showing of the "objective reasonableness" of the challenged conduct. In this regard, we have emphasized that the moving party has no burden to disprove any unsupported claims of his opponent, especially where, as here, " 'the reasons for swiftly terminating insubstantial lawsuits are particularly strong.' "
 
 
 68
 ....
 
 
 69
 Once a showing of objective reasonableness is produced, "the plaintiff may avoid summary judgment only by pointing to specific evidence that the official's actions were improperly motivated."
 
 
 70
 Id. at 755, 758 (citations omitted).
 
 
 71
 In the present case, the decision to terminate was made by Chief Baker and ratified, first by the Police Review Board, and then by the City Council. The appellants have presented evidence that the termination was based solely upon Mr. Hicks' refusal to cooperate in the investigation into his missing personnel file. The appellants have therefore made a prima facie showing of the objective reasonableness of their actions. See id. at 758. Mr. Hicks has not come forward with any specific evidence that Chief Baker was improperly motivated when he terminated Mr. Hicks nor that, of the eleven people who subsequently ratified that decision, anyone except Ms. Diffey was improperly motivated. Mr. Hicks has done little more than repeat the conclusory allegations contained in his pleadings. See id. at 759. Therefore, summary judgment based on qualified immunity should be granted for all appellants except Ms. Diffey on that claim.[5] Mr. Hicks has met his burden of production at least with respect to Ms. Diffey, and we therefore may not grant summary judgment as to her. This holding is a very narrow one, however. We hold only that Mr. Hicks has raised a genuine question of material fact as to Ms. Diffey's possible improper motivation to terminate him. We do not reach the question of whether Mr. Hicks was actually damaged by Ms. Diffey's lone vote.
 
 
 72
 The appellants are entitled to qualified immunity on the property interest claim unless they violated Mr. Hicks' clearly established right. Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. A constitutional right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).
 
 
 73
 The district court held that, because the right to an unbiased tribunal is clearly established, the appellants cannot claim immunity in this case. However, while there is evidence that one voting member of the City Council, Ms. Diffey, harbored personal animosity toward Mr. Hicks, nothing points directly at the remaining individual councilmen who voted to uphold Mr. Hicks' termination. Without any evidence to the contrary, we must presume that each Councilman cast his vote honestly and with integrity. Withrow, 421 U.S. at 47, 95 S.Ct. at 1464.
 
 
 74
 We begin, therefore, with the proposition that each councilman, with the possible exception of Ms. Diffey, was constitutionally qualified to participate in and vote on the decision regarding Mr. Hicks' employment. The question then is: Was the law clearly established that, because one council member was arguably biased, the remainder of the council members, though qualified, must refrain from participating or face civil damages? The answer to that question is clearly no. In fact, the cases suggest that the established law is to the contrary. In cases in which some but not all members of an administrative tribunal were biased, the courts hold that the tribunal may reconvene without the biased members and vote anew. See Antoniu, 877 F.2d at 726; Cinderella Schools, 425 F.2d at 592; Berkshire Employees Ass'n of Berkshire Knitting Mills v. NLRB, 121 F.2d 235, 239 (3d Cir.1941). Thus, it is the participation of the biased members, not the unbiased, which constitutes the constitutional wrong. A contrary holding would place on all administrative tribunal members a duty to ferret out possible bias among their colleagues, or to face civil damages regardless of their own fairness and integrity. Such a rule would disrupt the functioning of administrative tribunals. Our holding properly places on each tribunal member the duty to disqualify herself if she is biased in fact.
 
 
 75
 We hold that appellants Green, Brown, Pendergraft, Norton, Patterson, Justice, and Swanegan are qualifiedly immune from damages on the property interest claim because no clearly established law forbade them from participating in the tribunal. Mr. Hicks presented evidence of bias on the part of appellant Chapman, but Mayor Chapman did not vote on the appeal of Mr. Hicks' termination. There is no clearly established law that an arguably biased person may not be a non-voting participant in an administrative tribunal. See Amos Treat & Co. v. SEC, 306 F.2d 260, 267 (D.C.Cir.1962) (biased commission member may participate in new hearing as a staff member, but may not vote). Thus, appellant Chapman is qualifiedly immune from damages. Appellant Baker did not participate in the allegedly biased tribunal, although he did initiate the charges and recommend that Mr. Hicks be terminated. There is no clearly established law that a city official may not initiate insubordination charges which will eventually be heard by an arguably tainted tribunal. Thus, appellant Baker is immune from damages. Appellants DeSpain and Rickey had no involvement in the allegedly biased tribunal. Appellant Rickey left the scene before the events which eventually led to Mr. Hicks' termination. Therefore, Mr. Hicks fails to state a due process claim against appellants DeSpain and Rickey.
 
 
 76
 We affirm the district court's denial of qualified immunity for appellant Diffey on the property interest claim. We recognize that an administrative tribunal member is not disqualified because she has "ruled strongly against a party" in a prior hearing. NLRB v. Donnelly Garment Co., 330 U.S. 219, 237, 67 S.Ct. 756, 765, 91 L.Ed. 854 (1947). Nor is a tribunal member disqualified because she may have participated in the initiation of the proceedings. See Withrow, 421 U.S. at 56-57, 95 S.Ct. at 1469-70. However, Mr. Hicks has presented evidence that Ms. Diffey was the target of personal criticism by Mr. Hicks arising out of the traffic ticket incident. The Supreme Court has stated that when a tribunal member has been the target of personal abuse or criticism, the risk of actual bias is unconstitutionally high. Id. at 47, 95 S.Ct. at 1464. Mr. Hicks' evidence raises a genuine issue of material fact as to whether Ms. Diffey was biased when she sat on the tribunal which upheld his termination. The law is clearly established that a person who is biased in fact may not sit on a quasi-judicial tribunal. We emphasize again, however, the narrowness of this holding, which says nothing about causation or damages.
 
 
 77
 In summary, we hold that Mr. Hicks has failed to state a claim for deprivation of a liberty interest without due process of law. We hold that Ms. Diffey is not entitled to immunity on the First Amendment claim or the claim for deprivation of a property interest without due process of law. We hold that all other appellants are qualifiedly immune on those claims.
 
 
 78
 The order of the trial court is AFFIRMED in part and REVERSED in part, and the case is REMANDED to the trial court for action in accordance with this opinion.
 
 
 
 [1]
 Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation
 
 
 [2]
 The City of Watonga is not a party to this appeal
 
 
 [3]
 When the appellants pointed out in their motion for summary judgment that Mr. Hicks' girlfriend was never fired, Mr. Hicks admitted that fact, but continued, "[A]rguably she was constructively terminated based on stressful and intolerable working conditions resulting from the City of Watonga's actions against Officer Steve Hicks." Brief in Support of Plaintiff's Motion Opposing Defendants' Motion for Summary Judgment at 2. However, Mr. Hicks gives no details of the alleged constructive discharge, nor did he submit any affidavit from the girlfriend. His submissions are insufficient to raise an issue of fact as to whether there was constructive discharge
 
 
 [4]
 Mr. Hicks' argument that he had a constitutionally protected property interest in certain city procedures is unavailing. "A failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause." Mangels v. Pena, 789 F.2d 836, 838 (10th Cir.1986). The failure to provide certain interim procedures which are cited by Mr. Hicks did not give rise to the constitutional claims which he presses here
 Likewise, no property interest was infringed at Mr. Hicks' first round of hearings when he was suspended and then reprimanded. Mr. Hicks suffered no loss in pay because of the pre-hearing suspension. Suspension with pay does not raise due process concerns. See Loudermill, 470 U.S. at 544-45, 105 S.Ct. at 1494-95 (suggesting that suspension with pay may not raise due process concerns); Pitts v. Board of Educ. of U.S.D. 305, Salina, Kansas, 869 F.2d 555, 556 (10th Cir.1989) (suspension of public employee with pay does not infringe any measurable property interest).
 
 
 [5]
 Mr. Hicks argues broadly and perfunctorily that he is entitled to further discovery. He has not particularized his argument, nor "explained how any specific documents or deposition will aid in rebutting defendants' showing of objective reasonableness." Lewis, 903 F.2d at 759. He may not defeat the appellants' motion for summary judgment on qualified immunity grounds with vague, conclusory allegations that further discovery will enable him to raise a genuine issue of material fact. Id