Anthony LEWIS, Plaintiff,

v.

FOUR B CORP., Defendant.

No. 03–4194–SAC.

United States District Court, D. Kansas.

Nov. 18, 2004.

Anthony Lewis, Kansas City, KS, pro se.

John D. Dunbar, Daniels & Kaplan, P.C., Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

In this employment discrimination case brought pursuant to Title VII, the pro se plaintiff alleges racially discriminatory discipline. Plaintiff seeks actual damages of $78.00. This case comes before the court on cross motions for summary judgment, on plaintiff's motion to strike, and on plaintiff's motion to consolidate cases.

### Plaintiff's motion to consolidate

Plaintiff moves the court to consolidate this case with one he recently filed with another court in this same district, Case. No. 04–4134–RDR. In support of this motion, plaintiff states solely: "The new case is the same identical defendants same cause of action." Dk. 71, p. 1. Defendant objects to consolidation.

The governing rule is Fed.R.Civ.P. 42, which states, in pertinent part:

(a) Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

\* \* \* \* \* \*

In the recently-filed case, plaintiff has sued not only Four B Corp., the sole remaining defendant in this case, but also two defendants who have previously been dismissed from this case: Ron Giangreco and Tom Wiseman. Thus the defendants in the recently-filed case are not identical to those in this action.

This case is solely a race discrimination case concerning plaintiff's discipline which occurred in September and October of 2003. Specifically, plaintiff contends that he was discriminated against by defendant on the basis of his race by being accused of theft of product and by being suspended without pay for three days. In contrast, the recently-filed case alleges not only disparate treatment based on race, but also retaliation, and race, color, and sex discrimination in August and September of

2004 relating to termination of plaintiff's employment.

This case was filed over a year ago. Discovery has been completed for several months, and the matter is ripe for summary judgment. The recently-filed case was commenced on October 12, 2004, thus little to no discovery has occurred in it, and the dispositive motion deadline is not near.

Although the two cases may share a common question of law or fact relating to plaintiff's discipline in 2003, the two cases are largely procedurally, factually, and legally distinct. Plaintiff has failed to show that consolidation would promote trial convenience and economy in administration or that he will suffer any prejudice as a result of the court's refusal to consolidate. *See Shump v. Balka,* 574 F.2d 1341, 1344 (10th Cir.1978). Accordingly, plaintiff's motion for consolidation of cases shall be denied.

### Plaintiff's motion for summary judgment

On September 21, 2004, plaintiff filed a motion for summary judgment (Dk.67). The pretrial order establishes a dispositive motion deadline of August 6, 2004. *See* Dk. 63. The court cannot consider plaintiff's motion for summary judgment because it is untimely. Although the magistrate extended the time for plaintiff to respond to defendant's motion for summary judgment, that extension did not alter the deadline in which either party could file a dispositive motion, including plaintiff's motion for summary judgment. *See* Dk. 72.

Nonetheless, plaintiff's memorandum in support of his motion for summary judgment (Dk.68) is one and the same as his response to defendant's motion for summary judgment (Dk.66), which is timely and will be considered by the court, thus plaintiff shall suffer no prejudice from his untimely filing. Further, even had plain-

tiff's motion been timely filed, it would have been denied for the reasons subsequently set forth herein.

### Plaintiff's motion to strike

Plaintiff moves the court to strike defendant's opposition to plaintiff's motion for summary judgment. Plaintiff believes that defendant's brief, filed October 14, 2004, in response to plaintiff's summary judgment motion, filed September 21, 2004, was untimely. Plaintiff is in error, as the relevant rules permit a response to a dispositive motion, served by mail, to be filed within 23 days of the motion. *See* D. Kan. Rule 6.1(e)(2); Fed.R.Civ.P. 6(e). This motion will be denied as moot, given the court's ruling above regarding plaintiff's motion for summary judgment.

### Defendant's motion for summary judgment

### Summary judgment standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga, Okla.,* 942 F.2d 737, 743 (10th

Cir.1991). Once the moving party meets its burden, the burden shifts to the non-moving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538; *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The non-moving party may not rest on his pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241. Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

■ All facts on which a motion or opposition is based shall be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories and responses to requests for admissions. Affidavits or declarations shall be made on personal knowledge and by a person competent to testify to the facts stated which shall be admissible in evidence. D. Kan. R. 56.1(d). The Court may only consider evidence whose content or substance is admissible. *Conoco Inc. v. J.M. Huber,* 148 F.Supp.2d 1157, 1166 (D.Kan.2001); *Gross v. Burggraf Const. Co.,* 53 F.3d 1531, 1541 (10th Cir.1995). "Hearsay testimony that would be inadmissible at trial may not be included." *Conoco,* 148 F.Supp.2d at 1166. "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed.R.Evid. 602. Statements not based on personal knowledge must be disregarded. *Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir.1991).

■ A pro se litigant's pleadings are construed liberally and judged against a less stringent standard than pleadings drawn by attorneys. *Hall,* 935 F.2d at 1110. However, "it is not the proper function of the district court to assume the role of advocate for the pro se litigant." *Whitney v. State of New Mexico,* 113 F.3d 1170, 1173–74 (10th Cir.1997). The court is not to "construct arguments or theories for [a party] in the absence of any discussion of those issues." *Drake v. City of Fort Collins,* 927 F.2d 1156, 1159 (10th Cir.1991).

### Statement of Uncontroverted Material Facts

Plaintiff, a black male, was employed at defendant's Price Chopper Store at 7734 State Avenue, Kansas City, Kansas, beginning in November of 2000. Plaintiff's job has been subject to the Collective Bargaining Agreement between defendant and United Food and Commercial Workers District Union Local 2 ("Union") since before 2003. Neither defendant's title nor his job duties is disclosed by the scant record before the court.

Three incidents give rise to plaintiff's complaints. The first occurred in mid-September, 2003, when co-employee Naomi Hernandez, a bakery worker, gave plaintiff a box of doughnuts, and marked them "N/C," meaning no charge. When

plaintiff was leaving the bakery, he showed a security guard the item, and the security guard stated, "O.K." Plaintiff then explained the matter to his team leader, who initialed the box. Plaintiff later saw the bakery manager, who informed him that she was the only one with the authority to give away bakery products. Plaintiff then put the box of doughnuts in the trash and left the store without them.

The second incident also involved plaintiff and Ms. Hernandez, when she had been employed at the store for approximately a week or two. Plaintiff, who had just gone off-duty, handed Ms. Hernandez a cell phone which had someone from the Jerry Springer Show on the line. Ms Hernandez, who had not yet clocked in, returned the phone to plaintiff and told him she had to clock in. The person on the telephone then asked plaintiff a question and plaintiff went to ask Ms. Hernandez, who took the phone and continued the conversation. Store personnel observed Ms. Hernandez talking on the cell phone while she was on duty.

On September 25, 2003, a meeting was held in the duty office at the store where plaintiff worked. Present were plaintiff, Union Business Agent Jerry Helmick, defendant's Human Resources Director Ron Giangreco, Store Director Tom Wiseman, plaintiff's mother Dorothy Lewis, who also worked at the store, and Ms. Hernandez. Helmick was present at the meeting to represent plaintiff, who was also a Union Steward at the time. At this meeting, Helmick told plaintiff that Giangreco planned to terminate plaintiff and Hernandez for theft. Instead, plaintiff was issued a written reprimand.

The written reprimand stated:

Anthony led another teammate to markdown N/C for donuts. He has misused company time by and through a new teammate. He has distracted and interrupted the workforce for non company or union business. These actions must stop. If they do not it could include suspension and or possible termination.

Dk. 58, Exh. 4. The document was signed by plaintiff, union agent Helmick, and a store representative.

The third incident included in the pretrial order also involved Ms. Hernandez. Plaintiff, who was off duty but in the store, called Ms. Hernandez via the intercom system while she was on the clock, causing her to stop what she was doing to talk to plaintiff. Although the content of their conversation(s) is not included in the record, Ms. Hernandez complained that plaintiff had sexually harassed her.

Upon learning of Ms. Hernandez's complaints, Store Director Wiseman sent plaintiff home on October 13th for three days without pay. Edward Queen, a white male co-employee, had previously been accused of sexual harassment but was never suspended or lost pay.

A meeting was held on October 15th between plaintiff, union agent Helmick, Store Director Wiseman, Dorothy Lewis and Ms. Hernandez. During that meeting, Store Director Wiseman told plaintiff that he had been sent home because he had distracted the workforce. Plaintiff contends that store representatives determined at that meeting that the sexual harassment complaint was unfounded, and that plaintiff would be paid for his three days lost wages. No subsequent disciplinary action was taken against plaintiff, but he was not reimbursed for his lost wages. This suit for discriminatory discipline followed.

### Authorities and analysis

■ A prima facie case of disparate discipline may be established if the plaintiff proves by a preponderance of the evidence that (1) the plaintiff is a member of a

protected class, (2) the plaintiff was disciplined by the employers, and (3) the employer imposed the discipline under circumstances giving rise to an inference of discrimination. *See Jones v. Denver Post Corp.,* 203 F.3d 748, 753 (10th Cir.2000). Defendant concedes the first two elements of plaintiff's prima facie case, but challenges the third.

■ "One of the ways this third prong may be met, and the method chosen by the plaintiff here, is by attempting to show that the employer treated similarly situated employees differently." *Id.* "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu v. Boeing Co.,* 112 F.3d 1398, 104 (10th Cir.1997) (quotation omitted); *see Rivera v. City and County of Denver,* 365 F.3d 912, 923 (10th Cir.2004); *Elmore v. Capstan, Inc.,* 58 F.3d 525, 530 (10th Cir.1995) (violations must be of comparable seriousness).

■ Plaintiff contends that his discipline gives rise to an inference of discrimination because Edward Queen, a white male, was accused of sexual harassment but was never suspended or lost pay, while plaintiff, a black male, was sent home and lost pay after being accused of sexual harassment. *See* Dk. 66, p. 2. Defendant counters that Edward Queen is not similarly-situated to plaintiff, and that his conduct was not comparably serious to plaintiff's.

The facts relating to Edward Queen are clear. The record, read in the light most favorable to plaintiff, shows that defendant's employee Ruth Patterson complained to Store Manager John Bauman in May of 2003 that co-employee Ed Queen bothered her and made her feel uncomfortable by always being in the bakery and asking her "what are you doing tonight?" Ed Queen was told by store management that Ms. Patterson had alleged that he had sexually harassed her by his comments, and was instructed to keep his distance. After Ms. Patterson spoke to Manager Bauman, Ed Queen's conduct stopped, and she never filed a sexual harassment charge against him. Ed Queen received no suspension relating to this incident. Ed Queen told plaintiff that management believed that Ms. Patterson was a "problem employee" who had made accusations against different men, and "since there were no problems with [Ed Queen], they just dismissed [the] claim, and no action was taken against him of any nature." Dk. 58, Exh. A., plaintiff's deposition, p. 15.

The reason for plaintiff's three-day suspension was noted by Union agent Helmick, who took contemporaneous notes at the October 15 meeting regarding plaintiff. He testified that those notes reflect the following conversation:

My first question was why was Anthony suspended. He thought he was suspended for sexual harassment. Tom Wiseman said, no, he did not suspend Anthony for using sexual—he suspended Anthony for using the intercom system and disrupting the workforce.

Dk. 58, Exh. B, Helmick depo. p. 24. Mr. Helmick recalled that the management's reason on October 15 for leaving plaintiff's suspension in place was because plaintiff's conduct in disrupting a worker by using the intercom was the same type of conduct that plaintiff had been warned about less than one month earlier. *Id.,* p. 28.

■ Assuming that both plaintiff and Ed Queen were accused of sexual harassment of co-employees, plaintiff nonetheless engaged in the very conduct prohibited by the written warning he admittedly received less than one month earlier. Plaintiff has produced no evidence that Ed Queen received a written warning prior to

having been accused of sexual harassment, or that defendant treated any other employee who had received a written warning more leniently for a subsequent offense than it treated plaintiff. "Different disciplinary measures taken in response to different acts ... by employees with different work records do not constitute disparate treatment for purposes of establishing a prima facie case." *Washington v. General Motors Corp.*, 1992 WL 370620, *6 (D.Kan.1992), quoting *Miller v. Yellow Freight Sys., Inc.*, 758 F.Supp. 1074, 1079 (W.D.Pa.1991), *aff'd*, 941 F.2d 1202 (3rd Cir.1991).

But even if Ed Queen violated a rule of comparable seriousness, plaintiff has failed to show that Ed Queen is similarly situated to himself because Ed Queen dealt with a different supervisor or manager than did plaintiff. The incident involving Ed Queen was handled by manager Bauman, not manager Wiseman.

> ... "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir.1997) (internal quotation marks omitted).

*Rivera*, 365 F.3d at 922. *Cf. Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1233 (10th Cir.2000) ("Different supervisors will inevitably react differently to employee insubordination."). Although this court could compare the actions of different supervisors if evidence of a company-wide policy were shown, plaintiff makes no allegation or showing of such a policy. *See Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1177–78 (10th Cir.2001). Plaintiff thus fails to make a prima facie case of disparate discipline. *See Hanlen v. Henderson*, 215 F.3d 1336, 2000 WL 628205, *4 (10th Cir.2000).

In the alternative, if plaintiff had met his burden to show a prima facie case, defendant must articulate a legitimate nondiscriminatory reason for its disciplinary decisions. Defendant has met that "exceedingly light" burden, *see Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1363 (10th Cir.1997), by stating that defendant's management believed at the time plaintiff was suspended that he had continued to disrupt his co-employees while they worked, and as a result, had disregarded the written warning he had received not long before.

The burden thus shifts to plaintiff to show that defendant's stated reason is pretextual.

> "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997) (internal quotation marks omitted).

> "The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir.1999), *overruled on other grounds by National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). "In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear to the person making the decision." *Watts v. Norman*, 270 F.3d 1288,

1295 (10th Cir.2001) (internal quotation marks omitted).

*Rivera,* 365 F.3d at 924–925.

 Here, no evidence of pretext is offered except defendant's treatment of the sexual harassment claim against Ed Queen. Although the disparate discipline of similarly-situated employees is relevant to the issue of pretext, *see Hanlen,* 2000 WL 628205 at *4, the court finds plaintiff's evidence insufficient to establish pretext for the same reasons it found the evidence insufficient to establish plaintiff's prima facie case.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Dk.57) is granted.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (Dk.65, 67) is denied as untimely, and that plaintiff's motion to strike (Dk.72) is denied as moot.

IT IS FURTHER ORDERED that plaintiff's motion to consolidate cases (Dk.71) is denied.