### BERKSHIRE EMPLOYEES ASS'N OF BERKSHIRE KNITTING MILLS v. NATIONAL LABOR RELATIONS BOARD.

### BERKSHIRE KNITTING MILLS v. SAME.

#### No. 7254, 7255.

Circuit Court of Appeals, Third Circuit.

June 19, 1941.

236

Wm. M. Rutter, of Reading, Pa., for petitioner Berkshire Employees Ass'n.

Joseph W. Henderson, of Philadelphia, Pa., and Bertolet & Bertolet, of Reading, Pa., for petitioner Berkshire Knitting Mills.

Ruth Weyand, of Washington, D. C., for respondent.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

This case comes before the court on petitions by Berkshire Knitting Mills and Berkshire Employees Association to review and set aside an order of the National Labor Relations Board, and on a cross-petition by the Board for enforcement of its order.

Prior to the hearing on the main part of the case Berkshire brought to this court a petition to adduce additional testimony. The court received that motion and ruled that it would be passed upon at the time of the presentation of the main case. This was done. After-events proved that the procedure was a wise one because the problems presented in the petition to adduce fall into perspective when viewed in the light of the main case.

Berkshire's motion for leave to adduce additional evidence contains a number of items which it contends show that it did not have a full and fair hearing before the Board, thus supporting its argument that the Board's order should not be enforced against it. Several of the grounds are so clearly lacking in merit that they might be dismissed as frivolous. It may be said as to them all, however, that none will be re-

fused on the ground that it was not made in timely fashion. Nor was any of the evidence sought to be adduced available to the petitioner at the time of the hearing. We have considered each point on the basis of what effect the evidence, if received, could have on the factual situation presented by the case.

■ 1. Berkshire desires to show an inter-office communication from the then secretary of the Board to its counsel in which the secretary relays a message from the general counsel of the Hosiery Workers[1] expressing the hope that the case could go to the Second instead of the Third Circuit because of the faster operation of legal process in that Circuit than in this. While such testimony might leave a rather astringent taste in the judicial mouth of this Circuit it is obvious there is nothing in this which, by any flight of the imagination, shows lack of due process of law for Berkshire.

■ 2. Complaint is made that Mr. Joseph B. Robison, a review attorney of the Board, had access to the Board's formal and informal files; likewise, that the outline used by an expert at the hearing, Mr. Saposs, was subsequently sent to Mr. Robison. This may be answered in a dozen ways, one of which is that Mr. Robison is not the responsible fact finder; the Board is. There is no merit in this point.

■ 3. A letter of inquiry from the Board's secretary to the Board's Regional Director asking for facts in connection with Berkshire which would indicate unfair labor practice. If the showing of such letter would prove anything this court is unable to understand what it would prove other than the fact that an inquiry was made.

■ 4. A letter from a member of the "Review Section" of the Board to its secretary tending to show that the Board's investigator did not call upon the employer in response to the latter's offer to cooperate prior to the issuance of a complaint on the charges. This point is utterly immaterial.

■ 5. Evidence tending to show that the Board refused to grant Berkshire a continuance for fifteen days until its super-intendent returned from Europe, although the Board had delayed the issuance of its complaint for more than nine months at the request of the Union. There is nothing in this. The superintendent was present and testified at the hearing.

■ 6. Charges in this case were filed January 20, 1937. The complaint was not issued by the Board until November 6, 1937. The evidence which Berkshire seeks to adduce on this point consists of memoranda mainly from the Regional Director to the Board's secretary. They tend to show that the postponement of the issuance of the complaint was at the request of union officials or their representatives and requested for various reasons having to do with Union tactics and strategy in connection with the strike then being carried on at the Berkshire mills. The matter of time with regard to the issuance of a complaint by an administrative body must necessarily be one of the matters within the discretion of that body. Numerous considerations may make it desirable that a complaint be issued promptly or be delayed, for example, pending a court decision, or the likelihood of settlement of a dispute by other means; these and others are matters in which the judgment of the administrative agency must be exercised. We do not find lack of due process of law in the fact of the delay or the failure to consult one of the parties to a hearing as to his convenience in the matter.

■ The reason for the delay is one of the elements which the Board, in the exercise of its discretion, may well consider, among other relevant matters, in framing a back pay order. This does not mean, however, that the memoranda described need to be made a part of the proceedings in this case. They are already in the files of the Board. The motion to adduce upon this point is denied.

■ 7. Berkshire seeks to adduce evidence which it alleges members of the staff of the Board suppressed and which, it is urged, shows that the strike at Berkshire's mills in the fall of 1936 was not caused by unfair labor practices, but was called for economic reasons. The motion on this point will be denied. In the first place it is already in the files of the Board. In the

[1] The charges in this case, upon which the Board issued its complaint, were filed by American Federation of Hosiery Workers, Branch #10, herein called the Union.

second place it is nothing more than a memorandum of the report of the field officer of an administrative agency to an official in the home office and is, at best, hearsay with regard to issues involved in the strike in progress at the time the report was written. In the third place, it would be utterly impracticable and undesirable to open up all the records and files of a public officer, a board or a court to examine all the documents or other communications which had passed between either members or employees of one of them prior to the conclusion upon any particular subject.

8. Finally, Berkshire seeks to adduce evidence as to the activities of Mr. Edwin S. Smith, a member of the Board, with regard to his participation in matters connected with the controversy between Berkshire and the Union prior to the filing of the complaint in this case and while the strike of 1936 was pending. The information which the petitioner desires to tender in this connection developed out of a Congressional Committee investigation of the operation of the National Labor Relations Board. As they touch this case the allegations may be briefly summarized as follows: During the strike it is alleged that Mr. Smith wrote to an acquaintance of his, Mr. Louis E. Kirstein, an executive in Wm. Filene Sons Company, of Boston, a customer of Berkshire. Mr. Smith's letter called attention to the difficulty at the Berkshire mills and said, inter alia, "I do most certainly feel that any stand which you might adopt would be listened to with great respect by the Berkshire company". A letter from Mr. Edelman, a Director of Research for the Union was enclosed with Mr. Smith's letter. And Mr. Edelman's letter had stated that the Union "Will appreciate any cooperation possible from large purchasers of Berkshire goods". The subsequent correspondence need not be detailed here. There were further letters from Mr. Edelman to Mr. Smith and from him to Mr. Kirstein and a considerable amount of material, consisting of reports of speeches in favor of the Union position in the strike, newspaper accounts and other similar matter, was forwarded from Mr. Smith to Mr. Kirstein.

Assuming the alleged facts are established, what is the duty of this court with regard thereto? That is the most difficult problem involved in this case. It is perfectly clear that the exercise of its duties by an administrative body must necessarily proceed in a different fashion from the orthodox method of administering justice in courts. This administrative body must at times be successively or simultaneously investigator, complainant, prosecutor, trier of facts, declarer of law and administrator, all in the same matter. To it is entrusted the responsibility for carrying out the policies of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., to further the public interest. Whether it is wise public policy to handle certain government functions through such an agency is a problem for the legislative body and not for courts. The latter must be exceedingly careful not to jump to hasty conclusions that because the administrative process differs in many ways from the judicial process it lacks due process of law.

Nevertheless, if the administration of public affairs by administrative tribunals is to find its place within the present framework of our government it is essential that it proceed, on what may be termed its judicial side, without too violent a departure from what many generations of English speaking people have come to regard as essential to fair play. One of these essentials is the resolution of contested questions by an impartial and disinterested tribunal. These adjectives are not absolute but relative as every thoughtful person knows. Decisions affecting human beings, made by human beings, necessarily are colored by the sum total of the thoughts and emotions of those responsible for the decision. The judicial process, or any other human process, cannot operate in a vacuum. The most we can hope for is that persons charged with the responsibility for decisions affecting other people's lives and property will be as objective as humanly possible. Certain rules, of more or less definiteness, have been worked out through judicial decision by judges to regulate their own conduct. The rules disqualifying a judge for bias are illustrations. Other rules have been provided by legislatures to secure fairness in the trier of the facts. Thus prospective jurors may be examined for views which indicate predilections for either party to the controversy. These rules are analogous but not necessarily conclusive here. In this case Mr. Smith's correspondence bears the possibility of interpretation that he was endeavoring to assist in a boycott on Berkshire's goods. This was at a time before

he was called upon, in his capacity as a Board member, to pass upon the questions concerning unfair labor practices by Berkshire. It goes far beyond a general predilection either for or against labor organizations in general or one organization in particular. It is comparable to the situation of a lawyer who has represented a client in an endeavor to get a settlement of a claim and, before the claim is settled, is appointed to the bench and sits in the very case as judge. The Board, itself, through its secretary, had warned its Regional Directors on May 19, 1936 against efforts to apply pressure on respondents through their customers to secure compliance with the Act.[2] Yet Regional Directors are not the part of the personnel of the Board who have the responsibility for the decisions of often close and highly controverted issues of fact. We conclude that in this case the facts, if proved, show a case which goes beyond the line of fair dealing with a particular litigant. If the circumstances alleged are proved Berkshire did not have a hearing before an impartial tribunal, but one in which one member of the body which made exceedingly important findings of fact had already thrown his weight on the other side. This is obviously not like a case where ill-advised extra-judicial statements have been made by a judge,[3] or where a litigant seeks to subject an administrative body to interrogatories to discover the inner workings of the administrator's mind.[4] It goes further and, in our judgment, it goes beyond that which is permissible from the standpoint of either litigants or public.

The Board argues that at worst the evidence only shows that one member of the body making the adjudication was not in a position to judge impartially. We deem this answer insufficient. Litigants are entitled to an impartial tribunal whether it consists of one man or twenty and there is no way which we know of whereby the influence of one upon the others can be quantitatively measured.

 The petition to adduce the additional testimony on this point is granted and the case referred back to the Board. The Board should receive the evidence and determine for itself whether, if the facts are established, one of its members is not disqualified from further participation in this case. If such finding is made the entire case will be reconsidered by the members not so disqualified.

The case is, therefore, remanded to the National Labor Relations Board for further proceedings in accordance with this opinion.

[2] "Memorandum. To Regional Directors, from Benedict Wolf. Several instances have been called to the attention of the Board where regional directors, in order to secure compliance with the Act, have communicated directly or indirectly with customers of the respondent in an effort to have these customers apply pressure on the respondent to get him to comply with the Act. The Board feels that this procedure is highly undesirable and leaves it and the members of its staff who pursue these tactics open to justifiable criticism, both from the public and the courts. We must make every effort to avoid any such tactics in the future. Sincerely yours, Benedict Wolf."

[3] Lumber Mut. Casualty Ins. Co. of New York v. Locke, 2 Cir., 1932, 60 F. 2d 35.

[4] National Labor Relations Board v. Botany Worsted Mills, Inc., 3 Cir., 1939, 106 F.2d 263.