AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Petitioner,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION, Respondent,

Eastern Air Lines, Inc., Intervenor.

No. 89–1254.

United States Court of Appeals, District of Columbia Circuit.

Argued March 8, 1990.

Decided March 30, 1990.

Gary Green, with whom R. Russell Bailey was on the brief, for petitioner. Margaret Ann Samuels and Loretta B. Looper, Columbus, Ohio, entered appearances, for petitioner.

Michael Boudin, Deputy Asst. Atty. Gen., with whom James F. Rill, Asst. Atty. Gen., John J. Powers, III, and David Seidman, Dept. of Justice, and Mary B. Reed, Thomas L. Ray, Robert D. Young, and Barry L. Molar, Attys., Dept. of Transp., were on the brief, for respondent. Diane R. Liff, Atty., Dept. of Transp., Washington, D.C., also entered an appearance, for respondent.

William R. Stein was on the brief, for intervenor. Robert N. Duggan, Washington, D.C., also entered an appearance, for intervenor.

Before RUTH BADER GINSBURG, SILBERMAN, and SENTELLE, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

The Air Line Pilots Association (ALPA) challenges a determination by the Department of Transportation (DOT or Department) that DOT's Secretary was not required to recuse himself from a matter involving a client of the Secretary's potential employer. The potential employer did

not represent the client in the matter at issue, but did represent that client in other matters pending before DOT. We find no cause to disturb the Department's disposition and therefore deny the petition for review.

### I.

In the spring of 1988, DOT conducted a six-week preliminary investigation into the fitness of Texas Air Corporation, an airline holding company, and all its wholly-owned subsidiaries, including Eastern Air Lines.[1] On June 2, 1988, then-DOT Secretary James Burnley reported the investigatory team's conclusion that Eastern met the continuing fitness requirements.

Eastern announced the sale of its Air Shuttle to Donald Trump in October 1988. On December 7, 1988, ALPA petitioned DOT to initiate a continuing fitness investigation of Eastern. ALPA maintained that the preliminary investigation had ignored key financial considerations, that Eastern's financial situation had worsened, and that the Air Shuttle sale would aggravate Eastern's plight. On December 14, 1988, in an order signed by Secretary Burnley, DOT denied ALPA's petition; the Department concluded that no issues raised by ALPA warranted revision of the conclusions reached after the preliminary investigation. *See* DOT Order 88–12–30, at 1.

Secretary Burnley left his DOT post in January 1989 to become a partner at Shaw, Pittman, Potts & Trowbridge (Shaw Pittman), a Washington, D.C. law firm that numbers Eastern among its clients. At the time ALPA submitted its December 1988 petition for a fitness investigation, Burnley was negotiating for a possible partnership with Shaw Pittman and another law firm. DOT's designated ethics official determined that because Shaw Pittman, Burnley's po-

tential employer, was not representing Eastern in the petition proceeding, Burnley could properly work on the matter.

 ALPA, on learning of the Burnley–Shaw Pittman connection, petitioned on February 14, 1989, for reconsideration of Order 88–12–30. ALPA argued that Burnley's decision not to investigate was tainted by bias in favor of Eastern and should be set aside. The new DOT Secretary, Samuel Skinner, concluding that Burnley had acted in conformity with applicable laws and regulations, denied the petition for reconsideration on March 23, 1989. *See* DOT Order 89–3–52. ALPA now renews its objections in petitioning for review of both Order 88–12–30 and Order 89–3–52. DOT reasonably determined, we are satisfied, that Burnley was not barred by law or regulation from ruling on ALPA's petition.[2]

### II.

ALPA first contends that Burnley's participation in the decision at issue violated a federal conflict-of-interest statute, 18 U.S.C. § 208, and implementing DOT regulations. Section 208 prohibits any government employee from participating in a proceeding "in which, to his knowledge, he, ... or any person with whom he is negotiating or has any arrangement concerning prospective employment, has a financial interest...." 18 U.S.C. § 208(a). The DOT regulations contain substantially similar provisions. *See* 49 CFR §§ 99.735–13(a), 99.735–15.

We recognize that criminal provisions such as 18 U.S.C. § 208 can inform judicial review outside the criminal enforcement context. But we find no authority interpreting section 208 to indicate ethics violations in a case where the link between

---

1. The investigation was mounted under 49 U.S.C. app. § 1371(r), which imposes an ongoing obligation on certificated air carriers to remain "fit, willing, and able" to provide transportation service.

2. DOT urges dismissal of ALPA's petition as moot based on events unfolding since December 1988. We do not find the case moot. No doubt events in the interim bear on the request for an

investigation of Eastern's continuing fitness. Were we to vacate DOT Order 88–12–30, however, ALPA not only would be relieved of any preclusion barrier based on that Order; in addition, ALPA might tender a supplemental pleading augmenting its initial presentation by addressing post-December 1988 events. *Cf.* FED. R.CIV.P. 15(d). We cannot forecast the fate of such a revised petition.

official and projected beneficiary is as attenuated as it is here. In the closest case counsel for ALPA could identify at oral argument, a government contract was held unenforceable because the government had been represented in negotiations by an active officer of the investment banking company that was likely to serve as financial agent for the project. *See United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 555–57, 81 S.Ct. 294, 312–13, 5 L.Ed.2d 268 (1961). We think it fanciful to suppose that Burnley faced a situation similarly "fraught with temptation." *Mississippi Valley*, 364 U.S. at 550, 81 S.Ct. at 309.

Opinions interpreting 18 U.S.C. § 208 by the Office of Government Ethics, the agency charged with providing advice on ethical matters to government personnel, establish that "[a] Government employee has a financial interest in a particular matter when there is a real possibility that he might gain or lose as a result of developments in or resolution of the matter." 83 OGE 1, at 2 (Jan. 7, 1983). Speculative gain or loss is not enough. *See id.*

We find entirely sensible Secretary Skinner's appraisal that "ALPA is engaging in sheer speculation" when it suggests that Burnley's employment negotiations with Shaw Pittman could have been advanced by the outcome of ALPA's petition, a matter not involving the firm. *See* DOT Order 89–3–52, at 4. It is equally implausible to project "a real possibility" of financial gain or loss to Shaw Pittman or Burnley by virtue of the Department's decision in Order 88–12–30. Indeed, the "make believe" quality of ALPA's position on Burnley's recusal is revealed in ALPA's repeated attempts to portray Burnley as negotiating for employment with Eastern, not with othertimes counsel to Eastern, Shaw Pittman.

DOT reasonably stated and applied in this case a bright-line rule: no participation by Burnley when a law firm that might employ him served as counsel in the case; but no bar to his participation when the firm did not so serve, though the matter involved a client represented in other matters by the firm. *See Center for Auto Safety v. FTC*, 586 F.Supp. 1245, 1249 (D.D.C.1984). The more stringent recusal requirement ALPA espouses—disqualification from any matter affecting a client of a prospective employer—would mean, effectively, that high government officials could not, before leaving their posts, negotiate with many, if any, of the District's large law firms. The political branches of government, so far as we can tell, have never authorized as an ethical requirement a rule of that severity.

Nor, contrary to ALPA's assertions, did DOT regulations designed to prevent the appearance of a conflict of interest between official responsibilities and possible allegiances to prospective employers require recusal. *See* 49 CFR § 99.735–9(c)(2). An administrator's decision whether to recuse herself under agency rules designed to avoid apparent impropriety is reviewable for abuse of discretion. *See Mississippi Indus. v. FERC*, 808 F.2d 1525, 1567 (D.C. Cir.), *vacated in part on other grounds*, 822 F.2d 1104, *cert. denied sub nom. Arkansas Public Serv. Comm'n v. FERC*, 484 U.S. 985, 108 S.Ct. 500, 98 L.Ed.2d 499 (1987). For the reasons well-stated in Secretary Skinner's March 23, 1989 order, and recapitulated above, Burnley's participation in this proceeding did not constitute an abuse of discretion.

■ ALPA also alleges, for the first time on appeal, that Burnley transgressed the standards set forth in 28 U.S.C. § 455, the judicial disqualification statute, made relevant to some extent to DOT officials through a Department regulation.[3] Because ALPA did not present this argument in its petition for reconsideration before the agency, the court should not consider it. *See* 49 U.S.C. § 1486(e); *Horizon Air Indus., Inc. v. DOT*, 850 F.2d 775, 780 (D.C. Cir.1988). It is far from apparent in any case either that the DOT regulation would govern Burnley's quasi-prosecutorial deci-

---

**3.** That regulation provides that "any DOT employee ... carrying out DOT's quasi-judicial functions ... [is] expected to conduct [himself] with the same fidelity to appropriate standards of propriety that characterize[s] a court and its staff." 14 CFR § 300.1.

sion whether to investigate Eastern or to what extent the regulation incorporates the substantive content of the recusal statute.

### CONCLUSION

ALPA has not presented the requisite good cause to disturb the challenged Department orders. The petition for review is therefore denied.

*It is so ordered.*