# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 1, 2020       Decided February 26, 2021

No. 20-1092

KIMBERLY SPRINGSTEEN-ABBOTT,
PETITIONER

v.

SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

On Petition for Review of an Order
of the Securities & Exchange Commission

*Dominic E. Draye* argued the cause for petitioner. With him on the briefs was *Steven M. Felsenstein*.

*Daniel Staroselsky*, Senior Litigation Counsel, Securities and Exchange Commission, argued the cause for respondent. With him on the brief was *John W. Avery*, Deputy Solicitor.

Before: MILLETT and RAO, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge*: The Financial Institutions Regulatory Authority ("FINRA") determined that Petitioner Kimberly Springsteen-Abbott misused investor funds and tried to cover it up. FINRA therefore barred Petitioner from the securities industry, fined her, and ordered her to disgorge certain misused expenses. The SEC affirmed the industry bar and disgorgement order. Petitioner now challenges the SEC's decision, but her constitutional arguments are forfeited, and the others are meritless.

**I**

This appeal arises from Springsteen-Abbot's mismanagement of two related businesses, Commonwealth Capital and Commonwealth Securities. Commonwealth Capital funds equipment leases and then bundles the leases into investment funds. Commonwealth Securities (a subsidiary of Commonwealth Capital) manages those funds and sells their securities to investors through a network of retail broker-dealers. Petitioner is the sole shareholder of Commonwealth Capital. She also served as the Chair, CEO, and Chief Compliance Officer of both companies.

Petitioner charged both her business and personal expenses to a single American Express account issued to Commonwealth Capital. Under what Springsteen-Abbott admits was an "outdated" accounting system, Petitioner Br. 5, Petitioner had the sole responsibility for later determining whether the charges should be allocated to the investor funds, her businesses, or (if personal expenses) herself. FINRA received tips that expenses were being improperly allocated at Petitioner's businesses, and it initiated an investigation.

FINRA alleged that Petitioner improperly assigned 1,840 charges to investor funds amounting to $208,954.44. According to FINRA's Enforcement Department, this misuse violated FINRA Rule 2010, which requires FINRA members and associated persons (like Petitioner) to "observe high

standards of commercial honor and just and equitable principles of trade." FINRA's National Adjudicatory Council agreed, concluding that the evidence demonstrated Petitioner's "purposeful pattern and practice of improperly allocating expenses to the Funds." J.A. 7. FINRA based its conclusion on specific proof offered for 109 of the expenses as well as an unquantified number of control person expenses.[1] As a result, FINRA barred Petitioner from the securities industry, imposed a fine of $50,000, and ordered disgorgement of $36,225.85 based on 84 of the specifically proven charges. Petitioner appealed FINRA's decision to the SEC. *See* 15 U.S.C. § 78s(d)(2).

The SEC first sustained the industry bar. Reviewing the FINRA record, the SEC agreed that, in violation of FINRA Rule 2010, Springsteen-Abbott

> routinely misallocate[ed] personal expenses, control person expenses, and expenses of other businesses to the Funds. These were not isolated oversights. [] Springsteen-Abbott's use of the [Commonwealth Capital] American Express card for personal charges . . . allowed her to conceal her misconduct from oversight for years. Springsteen-Abbott demonstrated the extent of

---

[1] Control person expenses—essentially the expenses of individuals in senior or executive roles—were prohibited from being charged to the funds by the offering documents. J.A. 2.

We also note that FINRA reached this conclusion after a remand from the SEC. Following an initial decision of the National Adjudicatory Council, the SEC was "unable to discharge [its] review function because [FINRA's] decision [was] unclear regarding what conduct it found to violate FINRA Rule 2010." J.A. 6 (citation omitted). Accordingly, the SEC remanded for the Adjudicatory Council to "clarify the basis on which it [was] upholding liability." J.A. 6 (citation omitted).

> her bad faith when she provided false business justifications for numerous expenses to both Enforcement and the Hearing Panel despite documentary evidence that contradicted her explanations.

J.A. 14.

This misconduct, the Commission explained, justified barring Petitioner from the securities industry. In the SEC's view, were Petitioner allowed to associate with a FINRA member firm, she "would present a risk to the integrity of the markets and to investors." J.A. 19. Springsteen-Abbott, the Commission noted, unjustifiably enriched herself to the harm of fund investors, and then provided false information in an attempt to justify her expenses. And since the securities industry "presents many opportunities for abuse and overreaching and depends very heavily upon the integrity of its participants," removing Petitioner from the industry is warranted to "prevent[] her from harming additional investors." J.A. 19 (citations omitted).

The Commission next turned its attention to the disgorgement order and fine. It found that the amount of the disgorgement order reasonably approximated Petitioner's ill-gotten gains, corresponding to 84 of the misallocated charges. It therefore affirmed the disgorgement order. Yet, in light of the other sanctions, the SEC concluded that the fine was excessive and set it aside. Under the then-existing FINRA Sanction Guidelines, the SEC explained that FINRA should generally not impose a fine in cases involving the "improper use of funds" where the Petitioner "is barred and [FINRA] has ordered disgorgement." J.A. 22–23 (citing FINRA Sanction Guidelines at 10 (Mar. 2015 ed.)) (cleaned up).

Springsteen-Abbott then filed this petition challenging the SEC's order. *See* 15 U.S.C. § 78y(a)(1).

**II**

Petitioner advances three arguments. First, starting from the (contested) premise that FINRA is a state actor, Springsteen-Abbott asserts its adjudication violated the Appointments Clause as well as the Constitution's Due Process guarantee. Second, Petitioner argues that her lifetime bar is impermissibly punitive. Then, Petitioner argues that the disgorgement of continuing education expenses for her employees was erroneous.

Petitioner's ambitious constitutional arguments are futile for a simple reason: Congress has prohibited us from considering issues not raised before the SEC. As Respondent rightly maintains, we may only entertain objections "urged before the Commission" unless "there was reasonable ground for failure to do so." 15 U.S.C. § 78y(c)(1). Since Springsteen-Abbott failed to raise her constitutional challenges before the Commission, we may not consider them unless her failure was reasonable.

In reply, Petitioner disputes the premise, asserting that she actually raised her Due Process arguments below by consistently "beg[ging] for due process" and making "many pleas for constitutional adjudication." Reply Br. 5–6. But this is insufficient; the Petitioner must raise the *substance* of her argument below. *See N.Y. Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007) ("It is not enough merely to mention a possible argument in the most skeletal way."). Petitioner's Due Process arguments focus on supposed punishment for unproven allegations and inaccurate allegations. But before the SEC, the Petitioner raised only three issues: (1) The broker-dealer expense items were proper under the business judgment rule; (2) The finding that she acted unethically and in bad faith was clearly erroneous; and (3) The sanctions were erroneous because FINRA Rule 2010 did not apply, and it applied its sanctions guidance incorrectly.

Petitioner therefore failed to previously raise any argument akin to the Due Process concerns she now presses.[2]

There may have been a good argument that § 78y(c)(1) does not apply to constitutional challenges to a statute—*i.e.*, the Petitioner's Appointments Clause argument—or that there was "reasonable ground" for the Petitioner not to urge such a challenge before the Commission. After all, "regulatory agencies are not free to declare an act of Congress unconstitutional." *Meredith Corp. v. FCC*, 809 F.2d 863, 872 (D.C. Cir. 1987) (citing *Johnson v. Robison*, 415 U.S. 361, 368 (1974)).

But this argument is precluded by our opinion in *Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015). There, we confronted the question of whether the Petitioner was required to urge a constitutional non-delegation challenge to the statutory scheme before the Commission. Applying § 78y(c)(1), we recognized that "adjudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies." *Id.* at 18 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 (1994)). Nevertheless,

---

[2] At oral argument, we repeatedly pressed Petitioner's counsel further on this question, asking him to direct the Court to where the Due Process arguments were made before the SEC. Oral Arg. at 2:04–7:55 (Dec. 1, 2020). Counsel first directed us to J.A. 73, 80, and 82, but none of these pages are even part of the argument section of Petitioner's brief to the SEC. *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) (laying the factual foundation for an argument is generally insufficient to avoid forfeiture). Nor do we understand these pages to raise the substance of Petitioner's Due Process arguments. Counsel then directed us to J.A. 247, but that page is a notice of appeal, not the substance of an argument made to the SEC. Counsel finally directed us to J.A. 203— actually an argument made to the SEC—but there, Petitioner simply argued that FINRA applied the wrong burden of proof. This argument is unrelated to the Due Process contentions before us.

we explained that, under § 78y(c)(1), "so long as a court can eventually pass upon the challenge, limits on an agency's own ability to make definitive pronouncements about a statute's constitutionality do not preclude requiring the challenge to go through the administrative route." *Id.* (quoting *Elgin v. Dep't of Treasury*, 567 U.S. 1, 17–18 (2012)). Thus, Springsteen-Abbott was required to exhaust her constitutional claims before the Commission. She has, moreover, not provided any reasonable grounds that would excuse her failure to do so. A constitutional argument does not categorically qualify as a "reasonable ground." *See Stoiber v. SEC*, 161 F.3d 745, 754 (D.C. Cir. 1998). Nor has there been an intervening change in law that might have excused her failure to press these contentions below. *Id.*

Our opinion in *Saad v. SEC*, 980 F.3d 103 (D.C. Cir. 2020) ("*Saad III*")—issued after briefing but before oral argument in this case—decides the question of whether the Petitioner's lifetime bar is impermissibly punitive. FINRA is generally prohibited from imposing "excessive or oppressive" penalties, which we have held limits FINRA to remedial sanctions. 15 U.S.C. § 78s(e)(2); *see, e.g.*, *Siegel v. SEC*, 592 F.3d 147, 157 (D.C. Cir. 2010). And in *Saad III*, we held that, if imposed to "protect the public," an industry bar is "remedial." 980 F.3d at 107–08. The Petitioner's argument—focused on the applicability of *Kokesh v. SEC*, 137 S. Ct. 1635 (2017)—was squarely rejected in *Saad III*. The SEC's remedial justification, previously described, finds adequate support in the record.

Springsteen-Abbott next asserts that continuing education expenses misallocated to the funds—rather than to her companies—were not "net profit," and thus not appropriate for remedial disgorgement after *Liu v. SEC*, 140 S. Ct. 1936

(2020). We disagree.[3] In *Liu*, the Supreme Court held that equitable disgorgement is limited to the benefit to the wrongdoer, or in other words, "the gains 'made upon any business or investment, when both the receipts and payments are taken into the account.'" *Id.* at 1939 (quoting *Providence Rubber Co. v. Goodyear*, 76 U.S. 788, 804 (1869)). Yet the Court also acknowledged that so-called "expenses" may be "wrongful gains 'under another name.'" *Id.* at 1950 (quoting *Goodyear*, 76 U.S. at 803). Here, by paying for continuing-education expenses out of the funds, rather than her wholly-owned business, Petitioner enriched herself by the amount of the savings. After all, as Petitioner testified, "money that's out of Commonwealth's pocket" is "[o]ut of my pocket" since she is the sole shareholder. J.A. 22, 756.

In reply, Springsteen-Abbott challenges whether the continuing education expenses were improper charges in the first place. She argues that "there is no textual argument that [the fund documents] prohibit reimbursement for employees' compliance education," leaving "a wide berth" for her "business judgment." Reply Br. 22–23. Thus, the SEC's approval of the disgorgement order was arbitrary and capricious. But it was incumbent on the Petitioner to make this point in the argument section of her opening brief. *See Citizens Ass'n of Georgetown v. FAA*, 896 F.3d 425, 434 (D.C. Cir. 2018) (Arguments not made until reply, even if the factual foundation is laid in the opening brief, are forfeited). So we, again, do not consider it.

\*     \*     \*

It's rather puzzling that so many cases of alleged forfeiture of constitutional arguments before an agency have

---

[3] We assume, *arguendo*, that remedial disgorgement is subject to the same limitations as equitable disgorgement that were described in *Liu*.

arisen recently all across the country. *See, e.g.*, *Gonnella v. SEC*, 954 F.3d 536, 543–46 (2d Cir. 2020); *Malouf v. SEC*, 933 F.3d 1248, 1255–58 (10th Cir. 2019). These cases cause needless disputes at the threshold of judicial review of agency action. The "specialized bar" should take care to either stay up to date on broad appellate legal trends or consult those who do. *See* Laurence H. Silberman, *From the Bench: Plain Talk on Appellate Advocacy*, 20 LITIGATION 3 (Spring 1994).

The petition is dismissed in part and denied in part.

*So ordered.*