# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued December 10, 2021        Decided April 22, 2022

No. 20-1516

FAST FOOD WORKERS COMMITTEE AND SERVICE EMPLOYEES
INTERNATIONAL UNION,
PETITIONERS

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

2MANGAS, INC., ET AL.,
INTERVENORS

———

On Petition for Review of an Order
of the National Labor Relations Board

———

*John M. West* argued the cause for petitioners. On the briefs were *Nicole G. Berner*, *Kathy L. Krieger*, *Michael Ellement*, and *G. Micah Wissinger*.

*Joel A. Heller*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Jennifer A. Abruzzo*, General Counsel, *Ruth E. Burdick*, Deputy Associate General Counsel, and *Elizabeth Heaney*, Supervisory Attorney.

*Pratik A. Shah* argued the cause for intervenor McDonald's USA, LLC in support of respondent. With him on the brief were *E. Michael Rossman, James E. Tysse*, and *Patricia A. Dunn*.

*Thomas M. O'Connell*, *Joseph A. Hirsch,* and *Louis P. DiLorenzo* were on the brief for intervenors 2Mangas, Inc., et al. in support of respondent.

Before: ROGERS and RAO, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* ROGERS.

SILBERMAN, *Senior Circuit Judge*: Petitioners, the Fast Food Workers Committee and Service Employees International Union, seek review of the NLRB's approval of the settlement agreements between the Board's General Counsel on the one hand, and McDonald's and a group of McDonald's franchisees on the other. Although Petitioners raise a host of objections, their primary concern is the agreements' failure to determine whether McDonald's is a joint employer with its franchisees. Another significant objection is directed to the participation of one of the Board's Members in this decision. It is claimed that he should have been recused.

We think that the Board's approval of the settlement agreements was within the Board's discretion. As to the claim that one of the panel members should have been recused, Petitioners fail to raise a due process challenge, either before the Board or before us. Therefore, the recusal issue is not

properly presented. Accordingly, we deny the petition for review.

I.

Petitioners—the unions—launched an organizing campaign directed at McDonald's franchisees. During the campaign, Petitioners filed unfair labor practice charges against McDonald's and certain franchisees.

The Board's General Counsel issued complaints in December 2014 alleging that the franchisees "violated Section 8(a)(1) of the Act by threatening employees, promising benefits to them, interrogating them, and surveilling their protected activity." The complaints also alleged that some of the franchisees violated Section 8(a)(3) "by unlawfully discharging 3 employees and suspending, reducing work hours of, or sending home early 17 others, all in retaliation for their union and other protected concerted activity."

Importantly, the complaints alleged that McDonald's could be held jointly and severally liable with its franchisees as a "joint employer," even though it was not alleged that McDonald's independently violated the Act. One of the General Counsel's stated objectives was to "update Joint Employer law within the Board context and to clarify the relationship between franchisor and franchisee as it fits within the broader framework of what constitutes a Joint Employer under the National Labor Relations Act." McDonald's responded that, far from an attempt to "update" and "clarify" the law, the General Counsel was making an "unprecedented claim" that McDonald's is a joint employer and "an unprecedented attempt to change the law on joint employment."

4

The cases were consolidated for hearing before an administrative law judge. The ALJ severed the New York and Philadelphia franchisee cases for trial and put the rest in abeyance. No evidence on the merits was entered in the stayed cases.

In January 2018, a new General Counsel filed a motion with the ALJ to stay proceedings so the parties could pursue a global settlement. The ALJ granted it. And in March 2018, the General Counsel and McDonald's presented proposed settlement agreements between each franchisee and the affected employees. Concurrently, the Board issued a notice of proposed rulemaking on the joint employer issue. *See* 83 Fed. Reg. 46,681 (Sept. 14, 2018). In 2020, the Board promulgated a final rule. *See* 85 Fed. Reg. 11,184 (Feb. 26, 2020) (codified at 29 C.F.R. § 103.40).

Among other provisions, the settlements provided the following: the 10 franchisees whose alleged violations of Section 8(a)(3) resulted in lost earnings would pay 100% of the backpay owed to the alleged discriminatees, plus interest; those 10 franchisees would each contribute to a $250,000 Settlement Fund that would compensate discriminatees if a franchisee committed the same type of Section 8(a)(3) violation within nine months of the settlement's approval; all franchisees would post a remedial notice for 60 days and mail copies to all former employees; the notice would contain a statement of employees' rights, state that the franchisee will not take the unlawful actions alleged in the complaint, and provide that the franchisees would comply with the notice. If the settlements were approved, the General Counsel could move to withdraw the complaint within ten days after their approval.

Although the settlements did not treat McDonald's as a joint employer, they did require McDonald's to take certain actions to support the settlements. For example, if a franchisee did not comply with its settlement, McDonald's would mail a Special Notice to the employees of the franchisee stating that the franchisee violated the Act and the settlement, and that McDonald's disavows the conduct. McDonald's was also required to collect money for the Settlement Fund from the franchisees and deposit it with the Board. If McDonald's violated the settlements, the General Counsel could add McDonald's as a party to a new complaint and include a joint employer allegation.

The ALJ denied the General Counsel's and McDonald's motions to approve the settlements. The ALJ was concerned that the settlements did not resolve the joint employer issue. The General Counsel and McDonald's appealed to the Board. Petitioners supported the ALJ's decision. They also moved for the recusal of two Board Members, Chairman Ring and Member Emanuel, on grounds that the Members each had a conflict of interest.

The Board reversed the ALJ and ordered the case remanded with instructions to approve the settlements. The Board relied on its "broad discretion" to "approve settlement[s]." The factors it considers are set forth in *Independent Stave Co.*, 287 NLRB 740 (1987). *See also UPMC*, 365 NLRB No. 153 (2017). In considering settlements, the Board evaluates:

> all the surrounding circumstances including, but not limited to, (1) whether the charging party(ies), the respondent(s), and any of the individual discriminatee(s) have agreed to be bound, and the position taken by the General Counsel regarding the

settlement; (2) whether the settlement is reasonable in light of the nature of the violations alleged, the risks inherent in litigation, and the stage of the litigation; (3) whether there has been any fraud, coercion, or duress by any of the parties in reaching the settlement; and (4) whether the respondent has engaged in a history of violations of the Act or has breached previous settlement agreements resolving unfair labor practice disputes.

287 NLRB at 743.

The Board concluded that "the settlement agreements are reasonable under *Independent Stave*." Member McFerran dissented.

* * *

In response to the recusal motions, the Board noted that the motion to recuse Chairman Ring was moot because he did not participate in the case and that Member Emanuel had independently decided that he did not need to recuse after consulting with the Board's Designated Agency Ethics Official.

Petitioners moved to reopen the record and for reconsideration. They sought to introduce a document purporting to be a recusal list for Member Emanuel that included McDonald's. However, the Board noted that Petitioners had access to this document prior to Member Emanuel's decision and the Board's order. And, in any event, the Board unanimously (including Member McFerran) denied the motion, reasoning that Petitioners failed to explain why the document would require a different result under the applicable ethics rules.

This petition for review followed. Petitioners challenge both the order approving the settlement agreements and the order denying the motion to reopen and for reconsideration.

## II.

Petitioners face a steep hill in challenging the Board's approval of the settlements because our standard of review of the Board's decision whether to accept a settlement is quite narrow, i.e. abuse of discretion. *See, e.g.*, *Titanium Metals Corp. v. NLRB*, 392 F.3d 439, 447 (D.C. Cir. 2004).[1]

Petitioners present a slew of objections to the settlements, but only two are significant. (1) Petitioners argue that the Board was arbitrary and capricious (unreasonable) in approving the settlements, in light of the unions' objections. (2) Petitioners also contend that the Board's order was invalid because Member Emanuel should have recused himself.

In determining that the settlements were reasonable, the Board applied its *Independent Stave* test, only the first two factors of which are relevant to the case.[2] Applying the first

---

[1] Petitioners claim that the Board violated its own standard of review by considering the ALJ's decision de novo rather than in accordance with abuse of discretion. But this is rather artificial since the dispute between the ALJ, the General Counsel, and the Board—the treatment of the joint employer standard—is a fundamental policy issue. And it is the Board, not an ALJ, that sets labor policy in accordance with the National Labor Relations Act. *See Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 500 (1978).

[2] No one disputes that the third and fourth factors weigh in favor of the settlements. There is no evidence of any fraud, coercion, or duress in reaching the settlements. Neither McDonald's nor the

factor, the Board considered the views of the parties and agreed with the ALJ that the factor was "inconclusive." While the General Counsel, McDonald's, the franchisees, and every affected employee who received front pay instead of reinstatement agreed to the settlements, Petitioners opposed them.

It is noteworthy that the Board's standard specifically refers to the General Counsel's view. And the Board recognized in this case that the General Counsel's support for the settlements was "an important consideration." After all, the General Counsel—a Presidential appointee confirmed by the Senate—has virtually unreviewable discretion whether to bring a complaint in the first instance. *See NLRB v. United Food & Commercial Workers Union, Loc. 23, AFL-CIO*, 484 U.S. 112, 126 (1987). So his or her view logically is given considerable weight. The new General Counsel, who was appointed by a new President in November 2017, had a different policy view than the General Counsel who brought the case on whether to expand the joint employer standard. And that surely influenced his decision to settle the case without insisting that McDonald's be treated as a joint employer.

The Board, applying the second *Independent Stave* factor, determined that the settlements were reasonable. The question remains whether that determination was within its discretion.

We have held that the Board has broad discretion to approve settlements "in the course of the Board's prosecution of an unfair labor practice charge." *See, e.g.*, *Dupuy v. NLRB*, 806 F.3d 556, 562 (D.C. Cir. 2015). The Board itself has stated that it "has long had a policy of encouraging the peaceful,

---

franchisees have a history of unfair labor practices or have breached previous settlement agreements.

nonlitigious resolution of disputes." *Indep. Stave Co.*, 287 NLRB at 741. Courts have recognized that policy. *See, e.g.*, *Wallace Corp. v. NLRB*, 323 U.S. 248, 253–54 (1944); *Textile Workers Union of Am. v. NLRB*, 294 F.2d 738, 739 (D.C. Cir. 1961).

The Board concluded that the absence of a joint employer finding for McDonald's did not make the settlements inappropriate. The Board observed that the settlements placed a number of obligations on McDonald's, even if McDonald's was not treated as a joint employer.[3] The ALJ rejected the settlements because they "[did] not in any way approximate the remedial effect of a finding of a joint employer status." But under *Independent Stave*, the Board noted, a settlement does not have to "mirror a full remedy." 287 NLRB at 742–43. *See also UPMC*, 365 NLRB at *4.

Moreover, the Board agreed with the General Counsel that the value of a joint employer ruling in this case was greatly diminished by the Board's undertaking of a rulemaking on the joint employer standard. Indeed, after the hearing, the Board issued a notice of proposed rulemaking, 83 Fed. Reg. 46,681, and then promulgated a final rule, 85 Fed. Reg. 11,184 (codified at 29 C.F.R. § 103.40).

---

[3] If that had been done, it would have had a significant impact on like franchisee structures across the country regarding bargaining units. *See Hy-Brand Indus. Contractors, Ltd.*, 365 NLRB No. 156 at * 1–6 (2017) (discussing the impact an expanded joint employer rule would have on "labor relations policy and its effect on the economy" and the imposition of "unprecedented new joint bargaining obligations" on entities deemed joint employers) (overruling *BFI Newby Island Recyclery*, 362 NLRB No. 186 (2015) (*Browning-Ferris*), *enfd. in part and remanded*, 911 F.3d 1195 (D.C. Cir. 2018), *vacated* 366 NLRB No. 26 (2018)).

To be sure, if the case had proceeded to a conclusion before the Board and it had put off resolving the joint employer issue to a rulemaking, that would have been impermissible. It would have violated the principle of administrative law that "an agency faced with a claim that a party is violating the law . . . cannot resolve the controversy by promising to consider the issue in a prospective legal framework." *City of Miami v. FERC*, 22 F.4th 1039, 1043 (D.C. Cir. 2022). *See also MCI Telecomms. Corp. v. AT&T*, 512 U.S. 218, 222 (1994) (quoting *AT&T v. FCC*, 978 F.2d 727, 731–32 (D.C. Cir. 1992)). But this situation is quite different. There is nothing precluding the parties to the settlements, including the General Counsel, from determining as part of the settlements that it was unnecessary to resolve an issue in this litigation. And the Board cannot be criticized for failing to resolve an issue that was never actually presented to it.

Essentially then, this case simply involves a new General Counsel, and Board, determining not to expand the definition of joint employer. As legal scholars have recognized, the Board's legal policies and objectives, including statutory interpretations, change rather dramatically under different administrations. S*ee, e.g.*, Samuel Estreicher, *Policy Oscillation at the Labor Board: A Plea for Rulemaking*, 37 ADMIN L. REV. 163 (1985); Jeffrey S. Lubbers, *The Potential of Rulemaking by the NLRB*, 5 FIU L. REV. 411, 416 (2010) (noting that the NLRB's "shifting majorities often seek to change past adjudicative precedents"). And we have consistently affirmed the Board's policy shifts so long as they are explained and the relevant statute permits the change. *See, e.g.*, *Pittsburgh Press Co. v. NLRB*, 977 F.2d 652, 655 (D.C. Cir. 1992). This case represents such an example.

The Board determined that the settlements provided full monetary relief and a that joint employer finding would not

result in any additional monetary or substantive remedies. The Board explained that the settlements "would provide an immediate remedy for all 181 violations alleged." The employees who lost compensation because of the alleged violations received 100% of backpay plus interest. As the Board points out, the settlement approved in *Independent Stave* provided only 10% backpay. 287 NLRB at 740. Discharged employees received additional compensation because they waived their right to reinstatement. Further, the settlements provided for compensation for violations of the same unfair labor practices in the future, which ensure relief without additional litigation. The Board noted that the settlements also provided relief from past unlawful discipline and included default provisions that bound McDonald's and the franchisees.

The Board also observed that further litigation would be lengthy, uncertain, and risky, while the settlements provided certain and immediate relief. A losing party could appeal to the Board and then petition the court of appeals for review. The end of that litigation would only be conclusive as to the New York and Philadelphia franchisees, with a substantial number of outstanding severed cases yet to be tried. Further, the Board explained that because the joint employer liability issue is a fiercely contested question, this case carries "unusual litigation risk" and that a joint employer liability result was "far from certain." In light of all these considerations, the Board reasonably concluded that the benefits of the settlement agreements outweighed the value of continued litigation.

\* \* \*

Beyond these main arguments, Petitioners raise a series of objections to the settlements, each of which was endorsed by the ALJ, but nevertheless rejected by the Board. We have considered each of these objections and conclude that they are

insignificant. For example, the Board recognized that the settlements contained both a notice posting requirement and a requirement that the franchisees mail the notice to former employees. The Board reasonably found that these provisions "inform[ed] current and former employees about their . . . rights," and "provide[d] assurances that the Franchisees will not interfere with those rights."

Petitioners raise two objections to the notice provisions, but like so many of their objections they amount to a desire that the settlements be different—not that they were unreasonable. Petitioners complain that the settlements did not include a requirement of electronic posting. The Board determined that there was not enough evidence that the franchisees "customarily" communicated with employees electronically. *See J. Picini Flooring*, 356 NLRB 11, 13 (2010) (requiring electronic posting only if "the respondent customarily uses such electronic posting to communicate with its employees"). Petitioners also contend that the notice should have been posted at more locations. But the Board thought that it was reasonable for the notices to be posted at the locations where the alleged violations occurred. The cases Petitioners cite to support their argument hold only that broader notice posting is permitted— not that it is required for a settlement to be reasonable. *See, e.g.*, *Albertson's, Inc.*, 351 NLRB 254, 384 (2007).

In sum, given the Board's discretion to approve settlements and its careful and comprehensive analysis of the reasonableness of the settlements here, we conclude that the Board acted well within its discretion in approving them.

13

III.

Petitioners also argue that the Board's December 2019 order was invalid because Member Emanuel was required to be recused.

Under the National Labor Relations Act, we review only "final order[s] of *the Board* granting or denying . . . relief." 29 U.S.C. § 160(f) (emphasis added). *Cf. W. Coal Traffic League v. Surface Transp. Bd.*, 998 F.3d 945, 952–53 (D.C. Cir. 2021) (quoting *Pub. Serv. Comm'n v. Fed'l Power Comm'n*, 543 F.2d 757, 776 (D.C. Cir. 1974)) (holding that "[w]e exercise judicial review only over the actions of *the* [Surface Transportation] *Board*, not over the substance of the views of the individual commissioners" because "when we review the actions of a collective body such as the Board, 'it is its institutional decisions—none other—that bear legal significance'").

Member Emanuel's recusal decision, made in consultation with the Designated Agency Ethics Official, was an individual decision, not a final order of the Board. Therefore, we cannot directly review Member Emanuel's decision.

To be sure, even if the recusal decision was Member Emanuel's and not a "final order of the Board," 29 U.S.C. §160(f), the Board's ultimate decision would be invalid if Member Emanuel's participation violated Petitioners' right to due process. We made this principle clear in *Cinderella Career & Finishing Schools, Inc. v. FTC*, 425 F.2d 583 (D.C. Cir. 1970). In that case, we reversed and remanded an entire FTC order because a biased commissioner participated in the decision-making process. *See id.* at 589. It described the "test for disqualification" as "whether a disinterested observer may conclude that the agency has in some measure adjudged the

facts as well as the law of a particular case in advance of hearing it." *Id.* at 591 (cleaned up).[4] Reversing and remanding was necessary in *Cinderella* because allowing a biased FTC commissioner to participate in adjudicative proceedings constituted a violation of due process. *Id.* at 591–92. And in another case involving the same FTC commissioner, we concluded that his participation also "amounted . . . to a denial of due process." *Texaco, Inc. v. FTC*, 336 F.2d 754, 760 (D.C. Cir. 1964), *vacated and remanded on other grounds*, 381 U.S. 739 (1965).

But Petitioners have not argued that the proceedings violated due process either before the Board or before us. The Supreme Court has held that the NLRA statutorily precludes us "from considering an objection that has not been urged before the Board, 'unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances'" not present here. *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 311 n.10 (1979) (quoting 29 U.S.C. § 160(e)). Because Petitioners did not make a due process argument before the Board—even if it had been explicitly raised before us—we may not consider it. *See Springsteen-Abbott v. Sec. & Exch. Comm'n*, 989 F.3d 4, 7–8 (D.C. Cir. 2021).

Our colleague believes we are insisting on the "magic words" "due process." But our point is simply that Petitioners were obliged to make clear that they were bringing a

[4] We have since elaborated on the *Cinderella* test, stating that "we will set aside a commission member's decision not to recuse himself from his duties only where he has 'demonstrably made up [his] mind about important and specific factual questions and [is] impervious to contrary evidence.'" *Metro. Council of NAACP Branches v. FCC*, 46 F.3d 1154, 1164–65 (D.C. Cir. 1995) (quoting *United Steelworkers of Am. v. Marshall*, 647 F.2d 1189, 1209 (D.C. Cir. 1980), *cert. denied*, 453 U.S. 913 (1981)).

constitutional challenge before the NLRB (and before us). And the due process clause is the logical provision. You either assert a constitutional violation or you don't. A general complaint about unfairness or bias is not a constitutional challenge; nor is there a freestanding cause of action in a federal court to remedy a general claim of unfairness or bias.[5]

Accordingly, we conclude that Petitioners' argument that the Board's 2019 order was invalid because Member Emanuel should have been recused is not properly before us.[6]

\* \* \*

Because we determine that the Board did not abuse its discretion in issuing its order approving the settlements, and that Petitioners' recusal argument is not properly presented, we deny the petition for review.

---

[5] The discussions in *Cinderella* and *Metropolitan Council of NAACP Branches v. FCC*, 46 F.3d 1154 (D.C. Cir. 1995), on which our colleague relies, involve the evidence necessary to make out a due process violation.

[6] Petitioners also argue that the Board abused its discretion in denying their motion to reopen the record and for reconsideration of Member Emanuel's recusal decision in its September 2020 order. Petitioners sought to reopen the record to show that a purported recusal list for Member Emanuel included McDonald's. It is unnecessary for us to determine whether the Board's refusal to grant Petitioners' motion was legitimate. That is so because Petitioners' failure to raise a due process challenge to Member Emanuel's participation makes the motion to reopen irrelevant.

ROGERS, *Circuit Judge*, concurring in part and dissenting in part: Before the National Labor Relations Board, petitioners filed a motion for the recusal of Member Emanuel on the ground that, in view of his employment at a law firm representing McDonald's in the underlying proceedings, his participation in the proceedings before the Board "raises the specter of partiality towards Respondents." *Motion for Recusal of Chairman Ring and Member Emanuel*, at 5 (Aug. 14, 2018). The motion cited Executive Order No. 13,770, 82 Fed. Reg. 9,333 (Feb. 3, 2017), Ethics Commitments by Executive Branch Appointees, and 5 C.F.R. § 2635.502, Standards of Ethical Conduct for Employees of the Executive Branch). *See id.* at 5-7.

The Board denied the motion. It found that: (1) Member Emanuel had consulted with the Board's Designated Agency Ethics Official and determined that his recusal from this matter was not necessary; (2) no party in the ongoing proceeding was a former client of his; (3) his employment at the Jones Day law firm was outside the scope of Executive Order No. 13,770; (4) he did not have a "covered relationship" with a party or its representative in the pending proceeding; and (5) he had concluded that his prior affiliations would not "cause a reasonable person with knowledge of the relevant facts to question his impartiality." *Order* (Dec. 12, 2019), at 1 n.2 (citing 5 C.F.R. § 2635.502).

Petitioners challenge that Order, contending in part that Member Emanuel's participation resulted in an "ethically compromised and invalid Board [O]rder." Petitioners' Brief 20; *see also* Reply Brief 17. Contrary to the court's opinion, *see* Op. at 14, the issue of Member Emanuel's recusal is properly before the court.

Two key opinions of this court set forth controlling authority on the court's role when a party moves to recuse a

2

member of a decision-making administrative entity. First, in *Cinderella Career & Finishing Schools, Inc. v. FTC*, 425 F.2d 583 (D.C. Cir. 1970), the court drew on its precedents and decisions by our sister circuits in establishing the test for disqualification as whether "a disinterested observer may conclude that [the agency] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it." *Id.* at 591 (quoting *Gilligan, Will & Co. v. SEC*, 267 F.2d 461, 469 (2d Cir.), *cert. denied*, 361 U.S. 896 (1959)). For instance, the court cited *American Cyanamid Co. v. FTC*, 363 F.2d 757 (6th Cir. 1966), in which the Sixth Circuit reversed an order of the Federal Trade Commission because allowing a biased Commissioner to participate violated "the requirements of due process." *Cinderella*, 425 F.2d at 591. Further, it "adopt[ed]" the Third Circuit's position in *Berkshire Employees Ass'n v. NLRB*, 121 F.2d 235, 239 (3d Cir. 1941), that "[l]itigants are entitled to an impartial tribunal whether it consists of one man or twenty . . . ." *Cinderella*, 425 F.2d at 592. The Third Circuit had ordered additional factfinding on whether a Board member's impartiality might require disqualification, *see Berkshire*, 121 F.2d at 239, because the "essential" concept of "fair play" includes "the resolution of contested questions by an impartial and disinterested tribunal," *id.* at 238. This court explained that this circuit's precedent too requires that "an administrative hearing 'must be attended, not only with every element of fairness but with the very appearance of complete fairness.'" *Cinderella*, 425 F.2d at 591 (quoting *Amos Treat & Co. v. SEC*, 306 F.2d 260, 267 (D.C. Cir. 1962)).

Second, in *Metropolitan Council of NAACP Branches v. FCC*, 46 F.3d 1154 (D.C. Cir. 1995), this court applied the *Cinderella* test, reiterating that the court "review[s] an agency member's decision not to recuse himself from a proceeding under a deferential, abuse of discretion standard." *Id.* at 1164

(citing *Air Line Pilots Ass'n v. U.S. Dep't of Transp.*, 899 F.2d 1230, 1232 (D.C. Cir. 1990)).  The court explained that in an adjudicative proceeding the court "will set aside a commission member's decision not to recuse himself from his duties only where he has 'demonstrably made up [his] mind about important and specific factual questions and [is] impervious to contrary evidence.'"  *Id*. at 1165 (quoting *United Steelworkers of Am. v. Marshall*, 647 F.2d 1189, 1209 (D.C. Cir. 1980), *cert. denied*, 453 U.S. 913 (1981)).

Neither *Cinderella* nor *Metropolitan Council* requires petitioners to articulate an explicit constitutional challenge for this court to set aside an administrative decision in which a decisionmaker prejudged the matter.  In *Cinderella*, the court emphasized the "danger of unfairness through prejudgment" and evaluated the recusal challenge without citing a constitutional argument.  *See* 425 F.2d at 590.  And in *Metropolitan Council*, the court applied the test from *Cinderella* without identifying a constitutional challenge.  *See Metro. Council*, 46 F.3d at 1164-65.  Our precedent, then, is neither an outlier nor opaque in holding that if a biased decisionmaker participates in an administrative adjudication, this court can determine that such participation violates the principles of fair play and impartiality that underlie due process. *See Cinderella*, 425 F.2d at 592 (citing *Berkshire*, 121 F.2d at 239).

Notwithstanding this circuit's established and well-settled recusal test, the court denies the petition for review because petitioners did not raise an explicit constitutional challenge by arguing that Member Emanuel's participation "violated *due process* either before the Board or before [this court]."  Op. at 14 (emphasis added).  Although the words "due process" are not expressly included in petitioners' recusal motion, nothing in our precedent or our sister circuits' precedent establishes a

"magic words" test, much less that the absence of those two words automatically dooms the recusal motion. After all, the term "due process" is capacious. *See, e.g.*, *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 317 (D.C. Cir. 2014) (quoting *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 205 (D.C. Cir. 2001)); *see also Gilbert v. Homar*, 520 U.S. 924, 930 (1997). Indeed, this court has repeatedly cautioned against requiring litigants to use "'magic words' in order to adequately raise an argument," explaining that an "argument is preserved if the party has 'fairly brought' the argument 'to the [agency's] attention.'" *Nat'l Treasury Emps. Union v. FLRA*, 754 F.3d 1031, 1040 (D.C. Cir. 2014) (quoting *Dep't of Com. v. FLRA*, 672 F.3d 1095, 1102 (D.C. Cir. 2012)); *see United States v. Essex*, 734 F.2d 832, 842 (D.C. Cir. 1984). Yet that is what the court requires today.

Furthermore, petitioners' recusal motion used terms reflecting the Board's Ethics Recusal Report, which expressly recognizes that "there is a risk that a case or other matter could be decided with a fatal taint due to the recused member's participation." *NLRB Ethics Recusal Report*, 38-39 (Nov. 19, 2019). And the Report instructs that "a petition for review under Section 10(f) of the [National Labor Relations Act ("NLRA")] in an appropriate court of appeals is the proper venue for a recusal dispute to ultimately be decided," *id.*, which is what petitioners did.

Consequently, unlike in *U.S. Dep't of Commerce v. FLRA*, 7 F.3d 243, 245 (D.C. Cir. 1993), petitioners properly raised the substance of their recusal argument before the Board, *see Motion for Recusal*, at 5-7, and petitioned for review of the Board's recusal decision pursuant to NLRA Section 10(f), *see* Petitioners' Brief 20-21. The conclusion that this court "may not consider" petitioners' recusal challenge because it was not raised before the Board or this court, Op. at 14, is unfounded.

Because petitioners properly challenged Member Emanuel's disqualification before the Board, the Board ruled on its merits, and petitioners sought this court's review of that ruling, the court must address it.

Under the abuse of discretion standard, the court "will set aside a commission member's decision not to recuse himself from his duties only where he has 'demonstrably made up [his] mind about important and specific factual questions and [is] impervious to contrary evidence.'" *Metro. Council*, 46 F.3d at 1165 (quoting *United Steelworkers of Am. v. Marshall*, 647 F.2d 1189, 1209 (D.C. Cir. 1980), *cert. denied*, 453 U.S. 913 (1981)).  The court, therefore, must apply the *Cinderella* test, asking whether "a disinterested observer may conclude that [the decisionmaker] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it." *Id.* at 1164-65 (quoting *Cinderella*, 425 F.2d at 591).  In view of the Board's reasoning for denying the motion for disqualification of Member Emanuel, *see Order*, at 1 n.2, and petitioners' failure to timely bring before the Board an available recusal list for Member Emanuel as to McDonald's, *see* Op. at 6, petitioners have failed to establish that either Member Emanuel's denial or the Board's denial was an abuse of discretion.  Accordingly, upon finding no other error to the Board's Order, I concur in denying the petition for review.